J-S11013-17

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | |
|---|---|
| COMMONWEALTH OF PENNSYLVANIA, | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| Appellee | |
| v. | |
| W.P., | |
| Appellant | No. 691 WDA 2016 |

Appeal from the Judgment of Sentence of December 10, 2015
In the Court of Common Pleas of Clearfield County
Criminal Division at No(s): CP-17-CR-0000879-2014

BEFORE: OLSON and RANSOM, JJ., and STEVENS, P.J.E.*

MEMORANDUM BY OLSON, J.:                    **FILED APRIL 17, 2017**

Appellant, W.P.,[1] appeals from the judgment of sentence entered on December 10, 2015, as made final by the denial of his post-sentence motion on April 11, 2016. We affirm.

The factual background and procedural history of this case are as follows. Appellant is married to a registered nurse, J.P. ("Wife"). Appellant and Wife have five children, including three children they adopted from China. One of the adopted children, F.P., has a medical condition which

_____

[1] A minor witness testified regarding the sexual abuse of his sister in this case. Since that witness shares the same name as Appellant, we use Appellant's initials to protect the child's identity.

* Retired Justice specially assigned to the Superior Court

requires her to use a catheter. Another of the children adopted from China is A.P. ("Victim").[2]

When Victim was seven years old, Appellant began rubbing lotion on her chest. Thereafter, Appellant rubbed Victim's genitals approximately two or three times a week. This rubbing sometimes involved digital penetration of Victim's labia. On one occasion, Appellant inserted a catheter into Victim's urethra. These assaults continued for a period of two to three years.

On January 13, 2015, the Commonwealth charged Appellant via criminal information with 30 counts of aggregated indecent assault of a child,[3] 30 counts of indecent assault of a child,[4] 30 counts of corruption of a minor,[5] and involuntary deviate sexual intercourse with a child ("IDSI").[6] Jury selection occurred on June 18, 2015. During jury selection, Appellant moved to strike two jurors (Juror 15 and Juror 26) for cause. The trial court denied the motions to strike and Appellant exhausted his preemptory strikes prior to the empanelment of the jury.

---

[2] We remind counsel of 42 Pa.C.S.A. § 5988, which makes it a criminal offense to include Victim's full name in an unsealed filing with this Court. We seal Appellant's brief and the Commonwealth's reproduced record pursuant to that statutory provision.

[3] 18 Pa.C.S.A. § 3125(b).

[4] 18 Pa.C.S.A. § 3126(a)(7).

[5] 18 Pa.C.S.A. § 6301(a)(1)(ii).

[6] 18 Pa.C.S.A. § 3123(b).

On August 13, 2015, the jury convicted Appellant on all 91 charges. On December 10, 2015, the trial court designated Appellant a sexually violent predator and sentenced him to an aggregate term of 25 to 50 years' imprisonment. On Monday, December 21, 2015, Appellant filed a post-sentence motion. On April 11, 2016, the trial court denied the post-sentence motion. This timely appeal followed.[7]

Appellant presents six substantive issues for our review:

1. [Whether there was sufficient evidence to convict Appellant of IDSI?

2. Whether the trial court erred in denying Appellant's motions to strike two jurors for cause?

3. Whether the trial court erred in denying Appellant's motion for mistrial based upon the Commonwealth's reference to the impact of the crime on Victim?

4. Whether the trial court erred in not instructing the jury on the difference between penetration and touching?

5. Whether Appellant's convictions for aggravated indecent assault should merge with his convictions for indecent assault?

6. Whether the trial court abused its discretion when sentencing Appellant?]

Appellant's Brief at 6-7.[8]

---

[7] On May 16, 2016, the trial court ordered Appellant to file a concise statement of errors complained of on appeal ("concise statement"). **See** Pa.R.A.P. 1925(b). On June 1, 2016, Appellant filed his concise statement. On July 11, 2016, the trial court stated that the reasons for its rulings appeared as of record in its opinion denying Appellant's post-sentence motion. All of Appellant's issues were included in his concise statement.

[8] We have re-numbered the issues for ease of disposition.

In his first issue, Appellant argues that the evidence was insufficient to convict him of IDSI. "Whether sufficient evidence exists to support the verdict is a question of law; our standard of review is *de novo* and our scope of review is plenary." **Commonwealth v. Walls**, 144 A.3d 926, 931 (Pa. Super. 2016), *appeal denied*, 470 EAL 2016 (Pa. Feb. 23, 2017) (citation omitted). "In assessing Appellant's sufficiency challenge, we must determine whether, viewing the evidence in the light most favorable to the Commonwealth as verdict winner, together with all reasonable inferences therefrom, the trier of fact could have found that the Commonwealth proved [each] element of the crime beyond a reasonable doubt." **Commonwealth v. Ansell**, 143 A.3d 944, 949 (Pa. Super. 2016) (citation omitted). "The evidence need not preclude every possibility of innocence and the fact-finder is free to believe all, part, or none of the evidence presented." **Commonwealth v. Ford**, 141 A.3d 547, 552 (Pa. Super. 2016) (citation omitted).

In order to convict Appellant of IDSI, the Commonwealth was required to prove that: (1) Victim was less than 16 years old; (2) Appellant was four or more years older than Victim; (3) Appellant penetrated Victim's genitalia with a foreign object; and (4) that penetration was for a purpose other than good faith medical, hygienic, or law enforcement procedures. **See** 18 Pa.C.S.A. §§ 3101, 3123(a)(7), and 3123(b). Appellant concedes that the evidence was sufficient to prove the first three elements of the offense. He

argues, however, that the penetration was for a good faith medical procedure.

F.P., Victim's younger sister, has a medication condition which requires the use of the catheter. On one occasion, Appellant demonstrated how to use the device by inserting a catheter into F.P.'s urethra. Victim was present because she sometimes assisted F.P. in inserting a catheter. Appellant proceeded to insert a catheter into Victim's urethra. He stopped when Victim complained about the pain.

Appellant contends that the insertion of the catheter into Victim's urethra was a good faith medical procedure. Specifically, he argues that the insertion of the catheter into Victim's urethra was meant to teach F.P. how to insert a catheter into her urethra. The Commonwealth, on the other hand, argues that this is *post hac* rationalization for a criminal act.

We conclude that there was sufficient evidence for the jury to infer that Appellant's insertion of the catheter was not done as part of a good faith medical procedure. First, there was significant testimony regarding Appellant's other assaults of Victim. Second, Victim testified that demonstrating use of the catheter on her was unnecessary as she and F.P. were able to see the process when Appellant inserted the catheter into F.P.'s urethra. N.T., 8/12/15, at 69. Wife, a registered nurse, testified that she teaches patients how to insert catheters. She further testified that she "never" taught someone how to insert a catheter by demonstrating the

procedure on a third-party. ***Id.*** at 119. Although Appellant argued at trial that he inserted the catheter into Victim's urethra as part of a good faith medical procedure, the jury chose to believe the circumstantial evidence which pointed towards the act not being a good faith medical procedure. ***Cf. Nevada v. Solander***, 2016 WL 1601078, *4 (Nev. Apr. 19, 2016) (Insertion of a catheter can constitute sexual assault "because, while a catheter has a medical purpose, it does not necessarily follow that it was used for legitimate medical purposes. The reasons why a catheter was used, and the manner in which it was used, are questions of fact for the jury, not the court, to decide."). Accordingly, we conclude that there was sufficient evidence to convict Appellant of ISDI.

In his second issue, Appellant argues that the trial court erred in denying his motions to strike Juror 15 and Juror 26 for cause during voir dire. "[T]he jury selection process is crucial to the preservation of the right to an impartial jury as guaranteed by Article I, § 9 of the Pennsylvania Constitution." ***Commonwealth v. Buford***, 101 A.3d 1182, 1191 (Pa. Super. 2014), *appeal denied*, 114 A.3d 415 (Pa. 2015) (citation omitted). As this Court has explained:

> There are two types of situations in which challenges for cause should be granted: (1) when the potential juror has such a close relationship, be it familial, financial or situational, with parties, counsel, victims, or witnesses, that the court will presume the likelihood of prejudice; and (2) when the potential juror's likelihood of prejudice is exhibited by his conduct and answers to questions at voir dire. . . . In the latter situation, much depends upon the answers and demeanor of the potential juror as

observed by the trial judge and therefore reversal is appropriate only in case of palpable error.

***Commonwealth v. Kelly***, 134 A.3d 59, 61–62 (Pa. Super. 2016), *appeal denied*, 2016 WL 5400621 (Pa. Sept. 27, 2016).

As to Juror 15, the following examination occurred:

[Defense Counsel]: Thank you, Your Honor.  You heard this case does involve fairly young girls.  Any member of the panel feel as though, and given the nature of the case that they were, that you will have feelings of sympathy towards her and you might feel that it's your role to protect her?  Any member of the panel feel like they might approach the case that way, that they would have sympathy for the girl and that might affect how you view the case, you might feel like you have a role -- it would be your role as a protector of her? Any member of the panel feel that might happen to them? [Juror 15] is that right?

JUROR NO. 15: Yes.

[Defense Counsel]: Okay. Do you think that circumstance might arise with you, [Juror 15]?

JUROR NO. 15: I have two daughters, and I'm in the school system as well. And so, it's likely that I could have some sympathy.

[Defense Counsel]: Do you think in this type of case that you - - that those circumstances might influence how you view the evidence and how you would evaluate it?

JUROR NO. 15: It's possible.  I don't know.

[Defense Counsel]: Okay. So you're not able to tell us for --

JUROR NO. 15: Right.

[Defense Counsel]: -- that you would be fair. And I appreciate you telling us that, because that's the purpose of jury selection today, to be sure that we have jurors who can be fair.  So there's no shame in that, and I appreciate you telling me that,

because that's pretty honest. Your Honor, I think a strike for cause would be appropriate.

THE COURT: Ma'am, let me ask you this: This Defendant comes into court presumed to be innocent, and that presumption of innocence stays with him throughout the entire trial, and the only way he can lose that presumption is if the Commonwealth . . . proves to the jury's satisfaction guilt beyond a reasonable doubt. That's not guilt beyond all doubt, not guilt to a mathematical certainty.

Can you put aside the fact that you have two girls at home and you're in the education system and base your decision solely upon the facts and testimony that is presented during the course of trial, take the law as the Court gives it to you, apply that law to the facts as you, as a member of the jury, find them to be and arrive at a fair and impartial verdict, in other words, leave all outside influences out there and base your decision solely upon what was -- everything that is said and done while we are at trial?

JUROR NO. 15: i would have to base it on whatever is given.

THE COURT: All right. So you're able to do that?

JUROR NO. 15: Yes.

N.T., 6/18/15, at 29-31.

Appellant relies heavily on ***Commonwealth v. Penn***, 132 A.3d 498 (Pa. Super. 2016), in support of his argument that the trial court erred in denying his motion to strike Juror 15 for cause. ***Penn***, however, is distinguishable from the case at bar. In ***Penn***, the juror expressed an actual bias when originally questioned. Specifically, the juror in ***Penn*** stated that she would be more likely to believe a police officer than a civilian witness because of her romantic relationship with a police officer and her prior experience working for a police department. ***See id.*** at 500-501. It was

only after the Commonwealth attempted to rehabilitate the juror that she stated that she could decide the case based upon the evidence presented. *See id.* at 501.

In the case *sub judice*, Juror 15 never said that she would believe Victim's testimony over that of another witness. Moreover, Juror 15 never said that she would be partial and/or unfair when evaluating the evidence. Instead, Juror 15 merely stated that she would have sympathy for Victim. This is a natural reaction. An 11-year-old girl testified that she was sexually abused by her father. She was either telling the truth, in which case she deserved sympathy because of the abuse, or she was lying, in which case she deserved sympathy because an underlying psychological issue led her to falsely accuse her father of sexually abusing her. When directly questioned by the trial court, Juror 15 immediately answered that she could be fair and impartial and decide the case based solely upon the evidence presented at trial. Unlike **Penn**, in which the prospective juror explicitly stated she would be partial to the Commonwealth, this is a case in which Juror 15 expressed a natural feeling of sympathy for a troubled 11-year-old child but stated that she could be fair and impartial.

Appellant also relies upon **Commonwealth v. Johnson**, 445 A.2d 509 (Pa. Super. 1982), in support of his argument that the trial court erred in denying his motion to strike Juror 15 for cause. **Johnson**, however, is distinguishable for similar reasons. In **Johnson**, a prospective juror's

daughter had been the victim of a robbery and sexual assault. During voir dire, he stated that he broke down during the trial of his daughter's assailant. *See id.* at 512. Upon further examination, he stated that he thought it would be difficult to be fair because of the visceral emotional reaction he had during his daughter's assailant's trial. *See id.* It was only after the trial court exerted substantial pressure that the potential juror said he could be fair. *See id.* at 512-513.

Unlike the prospective juror in *Johnson*, Juror 15 did not reluctantly profess impartiality after lengthy questioning by the trial court. Instead, Juror 15 stated she could be fair the first time she was asked by the trial court. As noted above, Juror 15 merely stated a natural inclination to feel sympathy for a child sex abuse victim or a child falsely accusing her father of sexual abuse.

We find instructive our Supreme Court's decision in *Commonwealth v. Ingber*, 531 A.2d 1101 (Pa. 1987). In *Ingber*, a prospective juror stated that she was related to several police officers and that she would likely believe a police officer's testimony over that of a civilian. The defendant moved to strike the juror for cause and the trial court denied the motion. This Court affirmed; however, our Supreme Court reversed, concluding that the trial court erred in denying the motion to strike the juror for cause. Our Supreme Court explained that:

> The [challenged juror] clearly expressed her predisposition to credit the testimony of a police officer over that of a civilian

witness. **There is no indication in the record that this juror was questioned as to whether she would be able to put aside her feelings and evaluate the evidence in accordance with the court's instructions.** Such an inquiry was clearly necessary in order to determine this juror's qualification to serve.

*Id.* at 1103-1104 (footnote omitted; emphasis added).

This passage indicates that an initial expression of sympathy or predisposition toward one party does not automatically require disqualification. Instead, the trial court has the option of further examining the potential juror to determine if he or she would be able to put aside those feelings and fairly evaluate the evidence presented at trial. In *Johnson*, this Court held that such examination cannot be prolonged in an attempt to get the desired answer; however, *Ingber* indicates that disqualification is not required if a juror immediately indicates that he or she is willing to fairly adjudicate the case. That is what happened in this case. Juror 15 immediately stated that she could fairly deliberate this case when questioned by the trial court. The trial court witnessed Juror 15's responses to the questions set forth above and determined that she could be fair and impartial. We discern no abuse of discretion in the trial court's denial of Appellant's motion to strike Juror 15 for cause.

As to Juror 26, the following examination occurred:

[Defense Counsel: T]he fact that you have a child or a grandchild about [ten years old], do you think that would have any influence on the way that you would evaluate the testimony and the evidence in this case, that it would have any influence

on what sort of verdict you might render? Do you think you could set that aside?

* * *

JUROR NO. 26: I'm not sure.

[Defense Counsel]: You're not sure. Okay. That's a fair response. The Judge is going to tell you that you'll need to divorce yourself from, you know, whatever life experiences you have as far as how you evaluate the evidence.

Do you think that you would be able to – I appreciate you have either have a child or a grandchild about that age. The fact that you have a child or a grandchild, could you tell us for certain that that would have no influence on how you evaluate the evidence?

JUROR NO. 26: No, I can't say for sure.

* * *

THE COURT: Sir, let me ask you the same thing. Can you put the fact aside that you have a child or a grandchild similar in age to the alleged victim in this case, can you put that aside and, if you are selected as a juror, base your decision solely upon the facts and testimony that's presented during the course of trial and don't have any outside influences but solely on the facts and testimony and, of course, the law as the Court gives you, apply that law to the facts as you find them to be and arrive at a fair and impartial verdict?

JUROR NO. 26: Yeah.

N.T., 6/18/15, at 32-33.

Juror 26 never said that he would believe Victim's testimony over that of another witness. Moreover, Juror 26 never said that he would be partial and/or unfair when evaluating the evidence. Instead, Juror 26 merely stated that he wasn't 100% certain that he could ignore the fact that he had

a child or grandchild approximately the same age as Victim. This is an understandable answer in light of Appellant's counsel's phrasing of the question. There are few things that humans are "certain" about, particularly when it comes to a new experience like serving on a jury empaneled to determine whether a father sexually abused his daughter. When directly questioned by the trial court, Juror 26 immediately answered that he could be fair and impartial and decide the case based solely upon the evidence presented at trial. Unlike **Penn**, in which the prospective juror explicitly stated she would be partial to the Commonwealth, this is a case in which Juror 26 expressed a natural degree of uncertainty regarding his duty as a juror but unequivocally declared his ability to impartially consider the evidence.

Similarly, unlike the situation in **Johnson**, Juror 26 did not repeatedly proclaim his bias and then reluctantly pledge impartiality after prolonged questioning by the trial court. Juror 26 stated he could be fair the first time he was asked by the trial court. As noted above, Juror 26 merely stated a natural reservation about his duty as a juror.

Moreover, as noted above, **Ingber** indicates that disqualification is not required if a juror immediately indicates that he or she is willing to fairly adjudicate the case. Juror 26 immediately stated that he could fairly evaluate the evidence presented at trial when questioned by the trial court. The trial court believed Juror 26's response and determined that he could be

- 13 -

fair and impartial. We discern no abuse of discretion in the trial court's denial of Appellant's motion to strike Juror 26 for cause. Accordingly, Appellant is not entitled to relief on his second allegation of error.

In his third issue, Appellant argues that the trial court erred in denying his motion for a mistrial during the Commonwealth's closing argument. He contends that the Commonwealth improperly referenced the impact the crime had on Victim during its closing argument.

"We review the denial of a motion for mistrial under the abuse of discretion standard. A mistrial is an extreme remedy that is required only where the challenged event deprived the accused of a fair and impartial trial." *Commonwealth v. Smith*, 131 A.3d 467, 474–475 (Pa. 2015) (internal quotation marks and citations omitted). "[W]e will find that comments by a prosecutor constitute reversible error only where their unavoidable effect is to prejudice the jury, forming in their minds a fixed bias and hostility toward the defendant such that they could not weigh the evidence objectively and reach a fair verdict." *Commonwealth v. Cash*, 137 A.3d 1262, 1273 (Pa. 2016) (internal alteration, quotation marks, and citation omitted). Furthermore,

> [w]ith specific reference to a claim of prosecutorial misconduct in a closing statement, it is well settled that [i]n reviewing prosecutorial remarks to determine their prejudicial quality, comments cannot be viewed in isolation but, rather, must be considered in the context in which they were made. Our review of prosecutorial remarks and an allegation of prosecutorial misconduct requires us to evaluate whether a defendant received a fair trial, not a perfect trial.

- 14 -

*Commonwealth v. Hogentogler*, 53 A.3d 866, 878 (Pa. Super. 2012),

*appeal denied*, 69 A.3d 600 (Pa. 2013) (internal alteration and citation

omitted).

> During his closing argument, the District Attorney stated that:
>
> I mean, she's an eleven year old kid.  What child should have to come into the courtroom, sit here and explain to people what was going on to her at her own home by her dad?  I argue to you that, those events, that's something that's going to live with her for the rest of her life.  She's going to have those memories, those thoughts until the day she dies.  [Defense counsel] wants to say that's not fair, that's not fair to my client.  Think about [A.P.]

N.T, 8/13/15, at 54.  Appellant immediately moved for a mistrial based upon

those comments.  The trial court denied the motion.

> We believe that the outcome of this claim is controlled by this Court's

decision in *Commonwealth v. Judy*, 978 A.2d 1015 (Pa. Super. 2009).  In

that case, during his closing argument, the prosecutor stated that

> Sadly for child, this abuse that she suffered at the hands of her beloved Uncle Mike Judy is going to remain with her for the rest of her life.  All of the king's horses and all of the king's men can't fix that.  Finding Mike Judy guilty of the crimes that he committed won't completely fix that but your decision today while it can't completely fix it, potentially could make it a lot worse.

*Id.* at 1028 (internal alteration and citation omitted).  The defendant moved

for a mistrial and the trial court denied the motion.  This Court affirmed,

concluding that

> the comments of the assistant district attorney represented permissible oratorical flair framed expressly with the

> prosecutor's admonition that the case hinged on a credibility determination. A prosecutor is permitted latitude to make argument with oratorical flair. The prosecutor was not diverting the jury from deciding the case on the evidence; rather he was imploring the jury to do so. No relief is warranted.

*Id.* (internal citation omitted).

The District Attorney's comments in this case closely mirror those of the assistant district attorney in *Judy*. In both cases, the prosecutor noted the lifetime impact of the sexual abuse committed by a close family member. Moreover, in the case *sub judice*, the context of the District Attorney's comments is important. They were made in the middle of his argument relating to the 30 corruption of minors charges. He was attempting to explain to the jury that Appellant's actions tended to corrupt Victim's morals for the remainder of her life. Thus, like in *Judy*, we conclude that the District Attorney's statements in this case were permissible oratorical flair. *See Commonwealth v. Chmiel*, 889 A.2d 501, 544 (Pa. 2005). The comments attempted to direct the jury's attention to an element of corruption of minors – not divert the jury's focus or play upon the jury's sympathy. Accordingly, we conclude that the trial court did not abuse its discretion in denying Appellant's motion for mistrial.

In his fourth issue, Appellant argues that the trial court erred in not instructing the jury on the difference between penetration and touching. This argument is waived. To preserve a claim that a jury instruction was erroneous, a defendant must object to the charge at trial. *See*

- 16 -

***Commonwealth v. Spotz***, 84 A.3d 294, 318 n.18 (Pa. 2014) (citations omitted); Pa.R.A.P. 302(b) ("A general exception to the charge to the jury will not preserve an issue for appeal. Specific exception shall be taken to the language or omission complained of."); Pa.R.Crim.P. 647(B) ("No portions of the charge nor omissions from the charge may be assigned as error, unless specific objections are made thereto before the jury retires to deliberate."). As this Court has explained:

> The pertinent rules, therefore, require a specific objection to the charge or an exception to the trial court's ruling on a proposed point to preserve an issue involving a jury instruction. Although obligating counsel to take this additional step where a specific point for charge has been rejected may appear counterintuitive, as the requested instruction can be viewed as alerting the trial court to a defendant's substantive legal position, it serves the salutary purpose of affording the court an opportunity to avoid or remediate potential error, thereby eliminating the need for appellate review of an otherwise correctable issue.

***Commonwealth v. Parker***, 104 A.3d 17, 29 (Pa. Super. 2014), *appeal denied*, 117 A.3d 296 (Pa. 2015) (citations omitted).

In this case, at the conclusion of the jury charge, the trial court asked counsel if there were "any exceptions to the charge." N.T., 8/13/15, at 87. Appellant's attorney responded in the negative. ***Id.*** at 88. As Appellant did not object to the instructions prior to the jury retiring to deliberate, his fourth issue is waived. ***See Parker***, 104 A.3d at 29.

In his fifth issue, Appellant argues that the trial court erred in finding that his convictions for aggravated indecent assault of a child did not merge with his convictions for indent assault of a child. "A claim that convictions

- 17 -

merge for sentencing is a question of law; therefore, our standard of review is *de novo* and our scope of review is plenary." ***Commonwealth v. Kimmel***, 125 A.3d 1272, 1275 (Pa. Super. 2015) (*en banc*), *appeal denied*, 136 A.3d 980 (Pa. 2016) (citation omitted).

Merger in Pennsylvania is governed by section 9765 of the Sentencing Code. Section 9765 provides:

> No crimes shall merge for sentencing purposes unless the crimes arise from a single criminal act and all of the statutory elements of one offense are included in the statutory elements of the other offense. Where crimes merge for sentencing purposes, the court may sentence the defendant only on the higher graded offense.

42 Pa.C.S.A. § 9765. "Accordingly, merger is appropriate only when two distinct criteria are satisfied: (1) the crimes arise from a single criminal act; and (2) all of the statutory elements of one of the offenses are included within the statutory elements of the other." ***Commonwealth v. Raven***, 97 A.3d 1244, 1249 (Pa. Super. 2014), *appeal denied*, 105 A.3d 736 (Pa. 2014) (citation omitted).

This Court has held that all of the statutory elements of indecent assault of a child are not included within the statutory elements of aggravated indecent assault of a child and vice versa. ***Commonwealth v. Allen***, 856 A.2d 1251, 1253–1254 (Pa. Super. 2004), *appeal denied*, 870 A.2d 319 (Pa. 2005). Accordingly, the trial court correctly concluded that Appellant's aggravated indecent assault of a child convictions did not merge with his indent assault of a child convictions.

In his final issue, Appellant argues that his sentence is excessive. This argument is waived. At the time Appellant filed his notice of appeal, Pennsylvania Rule of Appellate Procedure 1911(a) provided that, "The Appellant shall request any transcript required under this chapter in the manner and make any necessary payment or deposit therefor in the amount and within the time prescribed by Rules 5001.1 *et seq*. of the Pennsylvania Rules of Judicial Administration (court reporters)." Pa.R.A.P. 1911(a).[9] "When the appellant [] fails to conform to the requirements of Rule 1911, any claims that cannot be resolved in the absence of the necessary transcript or transcripts must be deemed waived for the purpose of appellate review." ***Commonwealth v. Preston***, 904 A.2d 1, 7 (Pa. Super. 2006) (*en banc*), *appeal denied*, 916 A.2d 632 (Pa. 2007) (citation omitted).

In this case, Appellant failed to file a transcript request for the sentencing hearing when he filed his notice of appeal. For that reason, the transcript of the sentencing hearing is not included in the certified record.[10] As such, we cannot evaluate whether the trial court abused its discretion in sentencing Appellant to an aggregate term of 25 to 50 years' imprisonment. Accordingly, Appellant waived his discretionary aspects claim.

Appellant's Brief and Commonwealth's Reproduced Record sealed. Judgment of sentence affirmed.

---

[9] Rule 1911 has since been amended. ***See*** 46 Pa.B. 7801 (Dec. 17, 2016).

[10] It is similarly not included in the Commonwealth's reproduced record nor is it cited in Appellant's brief.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 4/17/2017