**COMMONWEALTH of Pennsylvania,**
**Appellee**

v.

**Daniel PENN, Appellant.**

Superior Court of Pennsylvania.

Argued Sept. 17, 2015.
Filed Feb. 1, 2016.

Paul D. Boas, Pittsburgh, for appellant.

Francesco L. Nepa, Assistant District Attorney, Pittsburgh, for Commonwealth, appellee.

BEFORE: BOWES, OLSON & STABILE, JJ.

OPINION BY OLSON, J.:

Appellant, Daniel Penn, appeals from the judgment of sentence entered on August 27, 2014. After careful consideration, we vacate the judgment of sentence and remand for a new trial.

On January 28, 2012, City of Pittsburgh Police Detective Brian Burgunder was on-duty and patrolling the Hill District of Pittsburgh in an unmarked police car with two fellow detectives. N.T. Trial, 5/6/14, at 65. At approximately 5:00 p.m. that night, Detective Burgunder witnessed Appellant drive a vehicle through a clearly posted stop sign, without coming to a complete stop. *Id.* at 68. The detective initiated a traffic stop of Appellant's vehicle and, during the stop, Detective Burgunder saw, in the center console of Appellant's vehicle, "clear plastic baggies containing a tan powder substance which [the detective] immediately recognized as heroin." *Id.* at 74. Detective Burgunder arrested Appellant and the Commonwealth later charged Appellant with a variety of crimes, including possession of a controlled substance with the intent to deliver (hereinafter "PWID").

Jury selection for Appellant's trial began on May 5, 2014. During the selection process, Prospective Juror Number 10—who was named R.Z.—answered "yes" to the following questions on the written juror information questionnaire: 1) "[h]ave you or anyone close to you ever worked in law enforcement or the justice system?" and 2) "[w]ould you be more likely to believe the testimony of a police officer or any other law enforcement officer because of his or her job?" N.T. Jury Selection, 5/5/14, at 36; *see also* Pa.R.Crim.P. 632.

During *voir dire*, R.Z. testified that: she currently works as a security officer for a casino; she previously worked in the California University of Pennsylvania Police Department for two years, while she was a student in college; she previously served two years in the United States Marshals' apprenticeship program; she previously completed an internship with the Bethel Park Police Department; and, her boyfriend is a police officer in a borough that surrounds the City of Pittsburgh. N.T. Jury Selection, 5/5/14, at 36–38. As is relevant to the current appeal, R.Z. also testified to the following during *voir dire*:

[Appellant's Attorney]: So you're pretty steeped in law enforcement?

A: Yes.

[Appellant's Attorney]: You would be more likely to believe the testimony of a police officer?

A: Yes.

[Appellant's Attorney]: Do you think they would be—

A: No. It wouldn't be impossible. I worked for a lawyer, too.

[Appellant's Attorney]: So you're going to have to hear from two or three police officers in this case. And you—because of your own personal experience in working in law enforcement, you would give them credibility, extra credibility simply because they are police. And

there are no right or wrong answers. Would it be hard for you not to believe them?

A: I feel like I would be more inclined to believe them, yes.

[Appellant's Attorney]: I have nothing else . . . .

[The Commonwealth]: What it comes down to though, the Judge would tell you that you can't give them any more weight or credibility. You would be instructed to do that. Do you think you could follow the instruction and not raise them up because of their position?

A: Yes.

. . .

[The Commonwealth]: Obviously your relationship with your boyfriend, would that—and the testimony of there being police officers in this case, would you be able to be fair and impartial?

A: I would think so, yes.

[The Commonwealth]: Follow up?

[Appellant's Attorney]: Well, when you—well, when you say you think so, I mean, basically the entire Commonwealth case is going to be testimony from the police officers. Would it be difficult for you to just not believe them because of your experience? I mean, you've been a police officer, you've worked with police, you're dating a police officer. I presume you have a certain attachment to this profession.

A: Correct.

[Appellant's Attorney]: I'm not going to offend you in any way if I am—I apologize, but would it be difficult to not—kinship to the police to cause for you not to be able—

A: I think it all comes down to evidence, testimony. So as long as I'd—

[Appellant's Attorney]: If they got up there and said, we don't know anything

and we. didn't see anything, I would understand, but if they testify to facts which you believe would be enough to convict, would it be hard for you not to believe them because of your experience? Would you, as you said before, you would be inclined to believe them?

A: (Nods head [in the affirmative].)

[Appellant's Attorney]: I know it's based on the evidence. .

A: Right.

[Appellant's Attorney]: But there would be an inclination on your part, because of your experience, to be more likely to credit their testimony?

A: I mean—again, I think it comes down to the evidence though.

*Id.* at 36–40.

The trial court denied Appellant's challenge to excuse R.Z. for cause and Appellant was forced to use one of his peremptory challenges to strike R.Z. as a juror. *Id.* at 138. Appellant eventually exhausted all of his peremptory challenges.[1] *Id.* at 138–141 and 176.

Appellant proceeded to a jury trial, where the Commonwealth presented two witnesses: Detective Burgunder and City of Pittsburgh Police Detective Edward Fallert. The jury found Appellant guilty of PWID and possession of heroin[2] and, on August 27, 2014, the trial court sentenced Appellant to serve a term of seven to 14 years in prison.

Appellant filed a timely notice of appeal from his judgment of sentence and Appellant now raises the following claims to this Court:[3]

[1.] Whether the [trial] court erred in failing to grant Appellant's cause challenge to Prospective Juror Number 10, [R.Z.], who answered "yes" on the juror questionnaire and during *voir dire* that she would be more likely to believe the police?

[2.] Whether the [trial] court erred in failing to sustain counsel's objection to the district attorney's improper comments in the form of vouching and bolstering during its opening statement when the district attorney told the jury that he and the police know that [ ] Appellant is a drug dealer and in failing to properly correct this improper conduct by the Commonwealth?

[3.] Whether the [trial] court erred in failing to dismiss the case on Appellant's motion for judgment of acquittal as the Commonwealth failed to prove that the drugs tested by the crime lab [were] in fact the material seized by the police?

Appellant's Brief at 4 (some internal capitalization omitted).

■ Appellant first claims that the trial court erred when it denied his challenge to excuse prospective juror R.Z. for cause, thus forcing Appellant to use one of his peremptory challenges to strike R.Z. as a juror. We agree. Therefore, we must

---

1. After Appellant exercised one of his peremptory challenges to strike R.Z., Appellant's original allotment of peremptory challenges was exhausted. N.T. Jury Selection, 5/5/14, at 139. We note that, prior to trial, Juror Number Three suffered a death in the family and was excused, thus necessitating an additional round of jury selection. *Id.* As a result, the trial court granted Appellant one additional peremptory challenge. *Id.* at 141. However, Appellant also exercised this additional challenge. *Id.* at 176.

2. 35 P.S. §§ 780-113(a)(30) and (16), respectively.

3. The trial court ordered Appellant to file and serve a concise statement of errors complained of on appeal, pursuant to Pennsylvania Rule of Appellate Procedure 1925(b). Appellant complied and, within Appellant's Rule 1925(b) statement, Appellant listed the claims he currently raises on appeal.

vacate Appellant's judgment of sentence and remand for a new trial.

■ As our Supreme Court has explained:

A criminal defendant's right to an impartial jury is explicitly guaranteed by Article I, section 9 of the Pennsylvania Constitution. The jury selection process is crucial to the preservation of that right . . . .

It must be remembered the purpose of the *voir dire* examination is to provide an opportunity to counsel to assess the qualifications of prospective jurors to serve. It is therefore appropriate to use such an examination to disclose fixed opinions or to expose other reasons for disqualification. Thus the inquiry must be directed at ascertaining whether the venireperson is competent and capable of rendering a fair, impartial and unbiased verdict. The law also recognizes that prospective jurors were not cultivated in hermetically sealed environments free of all beliefs, conceptions and views. The question relevant to a determination of qualification is whether any biases or prejudices can be put aside upon the proper instruction of the court.

A challenge for cause to service by a prospective juror should be sustained and that juror excused where that juror demonstrates through his conduct and answers a likelihood of prejudice. The decision whether to disqualify a venireman is within the discretion of the trial court and will not be disturbed on appeal absent a palpable abuse of that discretion.

*Commonwealth v. Ingber,* 516 Pa. 2, 531 A.2d 1101, 1102–1103 (1987) (internal quotations and citations omitted).[4] Stated another way, "the test of disqualification is the juror's ability and willingness to eliminate the influence of his scruples and render a verdict according to the evidence. This determination is to be made by the trial judge based on the juror's answers and demeanor and will not be reversed absent a palpable abuse of discretion." *Commonwealth v. DeHart,* 512 Pa. 235, 516 A.2d 656, 663 (1986) (internal citations, quotations, and corrections omitted).

In *Commonwealth v. Johnson,* 299 Pa.Super. 172, 445 A.2d 509 (1982), the defendant was convicted of criminal conspiracy, robbery, possession of an instrument of crime, and simple assault. At trial, the court rejected defense counsel's request to excuse a prospective juror for cause. The basis for counsel's request was that the juror's daughter had been the victim of a rape and robbery that possessed several important similarities with the facts in *Johnson.* The similarities greatly distressed the juror and his suffering became evident during *voir dire.* This led to the following extensive side-bar colloquy between the trial court and the juror, which was quoted at length in this Court's opinion:

THE COURT: [Juror], you related to me that—about an incident that occurred to your daughter and during that incident you were emotionally upset, and I was aware of your emotion and that concerns me, so I'm going to ask you that supposing in this case—supposing in this case there would be some evidence like similar to—supposing one of

---

4. We note that a challenge for cause should also be granted "when the potential juror has such a close relationship, be it familial, financial or situational, with parties, counsel, victims, or witnesses, that the court will presume the likelihood of prejudice." *Commonwealth v. Colon,* 223 Pa.Super. 202, 299 A.2d 326, 327–328 (1972). However, neither party argues that R.Z. maintained a relationship such that the court must presume a likelihood of prejudice.

the witnesses would say that this man—this is a hypothetical question, that this man wouldn't do something to her, sexually, if he didn't give the money or something of that sort; would that so overwhelm and emote [sic] you that you would be overwhelmed as to your conscience so that you couldn't be fair to both sides?

[JUROR]: Not only in answer to what you said but in thinking over my observation of my own reaction when I related this to you, I didn't realize how strongly I feel about this and if I consider that, I'm not what I thought I was and trying to be fair and consider the evidence in such a case and—

THE COURT: You believe you would be fair?

[JUROR]: I think it would be difficult because I can see how I'm reacting. I didn't realize how strongly I felt about this.

THE COURT: The charges here are not involving sex at all.

[JUROR]: I think just the fact that what happened to her in such an unusual condition, I think also was a robbery but at the last moment this is what the robbers did.

THE COURT: Okay. Now, the fact that that happened in that case, which is certainly unrelated to the evidence in this case, I mean what happened in one instance in another case—on another case under different circumstances doesn't mean it happened in this case. You are to consider only the evidence in this case.

[JUROR]: That's what I realize and that's what I thought sitting there before and realizing, thinking about it and realizing how I reacted just relating the incident signifies to me a much stronger—

THE COURT: Will you react to somebody else being molested? Will you react to that?

[JUROR]: I think it would bring back to mind the things I imagined happened at the time with my daughter.

THE COURT: Even though I instruct you that that's not a proper way to deal with it?

[JUROR]: I realize that, logically. It should not be so but I could see emotionally, I can see that I don't have full control in that case, because as I said, I didn't realize how strong it was in relating it to you and I didn't expect myself to break down, practically.

THE COURT: When it involves your daughter, I can see it, and you're relating a story involving your daughter but when it involves another person and you're asked to be a Juror because that's what we do and—

[JUROR]: I realize that. I'm wondering if I am able to do it.

THE COURT: You have to determine that whether the evidence is true in the other case, when you looked at your daughter, you said, well, my, why would my daughter go through this and what happened to your daughter, you can visualize as having happened but here you have to first determine whether it's true and then if you determine that, then you apply the law.

[JUROR]: I see.

THE COURT: So, you see it isn't every time that somebody says something that it's true. You have to determine that at first. Can you do that without being so upset as to impair your ability of making fair judgments?

[JUROR]: All right. I'll do that.

THE COURT: You must commit yourself to that endeavor, and if you have any reservations, we want to hear about

it. We can't have to [sic] so emotionally blank because something happens to you that you can't think, so you can apply yourself in a fair way. I mean, you know yourself best. We all have some emotional feelings about our members of our family. The question is whether that emotional feeling which is unrelated to this matter can overwhelm your faculties so that you could no longer be fair and be objective about a situation that's unrelated. That's the question. Can you be fair?

[JUROR]: Yes.

THE COURT: In an unrelated matter?

[JUROR]: Yes.

THE COURT: I'm going to repeat that again and going to say that supposing the evidence in this case should, for some reason, be that one of the victims may say and he threatened to do something to me sexually if I didn't give him the money, for some reason, would that so emote you as to overwhelm your faculties that you could no longer be fair?

[JUROR]: No. I think I could.

THE COURT: Be fair?

[JUROR]: Be fair.

THE COURT: All right. You may take your seat.

*Johnson*, 445 A.2d at 512–513.

In *Johnson*, this Court acknowledged that a prospective juror's close relationship to a victim of a separate crime did not compel a finding of prejudice in every case; thus, we declined to adopt a rule requiring compulsory exclusion of family members of crime victims. *Id.* at 514. However, based upon the review of the juror's testimony on *voir dire*, the Court found the particular facts in *Johnson* to be "especially compelling." *Id.* This Court therefore observed:

[The juror] vividly demonstrated during *voir dire* that he would be likely not to be an impartial juror. He not only visibly manifested emotional distress but specifically expressed substantial doubts about his ability to be impartial at least five times. Although he acknowledged that "logically" he could separate the robbery and rape of his daughter from the robbery of appellant's victims, he added at once that "emotionally, I can see that I don't have full control."

*Id.* On the strength of these observations, this Court said that the juror's eventual assurance that he could be fair did not dispel the force of his prior candid admissions. *Id.* The Court also expressed skepticism about the juror's assurances given that they appeared to be the product of suggestive questioning by the court aimed at eliciting a judicially desired response. *Id.* For each of these reasons, this Court determined that "the [trial] court's refusal to excuse [the juror] for cause [constituted] an abuse of discretion." *Id.*

The case at bar is similar to *Johnson*. As was true in *Johnson*, in this case, R.Z. initially indicated that she was incapable of "rendering a fair, impartial and unbiased verdict." *See Ingber*, 531 A.2d at 1103 (internal quotations and citations omitted). Specifically, in the case at bar, the Commonwealth's entire case rested upon the credibility of the police officers, given that the Commonwealth's only two witnesses at trial were City of Pittsburgh Police detectives. Yet, R.Z. answered "yes" to the written question "[w]ould you be more likely to believe the testimony of a police officer or any other law enforcement officer because of his or her job?"—and R.Z. then unequivocally testified during *voir dire* that she "would be more likely to believe the testimony of a police officer," thus indicating that R.Z. was biased in favor of the police and the Commonwealth. N.T. Jury Selection, 5/5/14, at 36; *see also* Pa.R.Crim.P. 632.

Further, as was true in *Johnson*, R.Z.'s admitted bias in favor of the police rested on a firm bedrock, given that R.Z. testified: she currently works as a security officer for a casino; she previously worked in the California University of Pennsylvania Police Department for two years, while she was a student in college; she previously served two years in the United States Marshals' apprenticeship program; she previously completed an internship with the Bethel Park Police Department; and, her boyfriend is a police officer in a borough that surrounds the City of Pittsburgh. N.T. Jury Selection, 5/5/14, at 36–38.

■ Finally, as in *Johnson*, R.Z. eventually testified that she would be able to follow the trial court's instructions and render a "fair and impartial" decision. However, in the case at bar, almost immediately after R.Z. testified that she would be able to "be fair and impartial," R.Z. **again** testified that, "because of [her] experience[,] ... [she] would be inclined to believe" the police. N.T. Jury Selection, 5/5/14, at 39. Therefore, as we held in *Johnson*, we hold in the case at bar that "[R.Z.'s] eventual assurance to the [trial] court that [she] would 'be fair' did not dispel the force of [her] admissions" of

bias.[5] *Johnson*, 445 A.2d at 514. We are thus constrained to conclude that the trial court abused its discretion when it denied Appellant's challenge to excuse R.Z. for cause. Moreover, we must conclude that the error was not harmless: "[w]here, as here, a defendant is forced to use one of his peremptory challenges to excuse a prospective juror who should have been excused for cause, and then exhausts his peremptories before the jury is seated, a new trial will be granted." *Johnson*, 445 A.2d at 514. We must therefore vacate Appellant's judgment of sentence and remand for a new trial.[6]

For Appellant's second claim on appeal, Appellant contends that the trial court erred when it failed "to sustain [Appellant's] objection to the district attorney's improper comments in the form of vouching and bolstering during its opening statement." Appellant's Brief at 27. This claim is moot, given that we vacate Appellant's judgment of sentence and remand for a new trial.

■ Finally, Appellant claims that the evidence was "insufficient to sustain [his] conviction[s]" because the Commonwealth failed to establish the chain of custody for the contraband. Appellant's Brief at 39–42. This claim fails because "any gaps in

---

5. R.Z.'s declaration that "it comes down to the evidence" also did not dispel her admissions of bias, given that R.Z.'s admitted view of the evidence was that police officers were entitled to more credibility. *See* N.T. Jury Selection, 5/5/14, at 39–40.

6. The Commonwealth contends that our opinion in *Commonwealth v. Hale*, 85 A.3d 570 (Pa.Super.2014) "is controlling in this matter." *See* Commonwealth's Brief at 19. The Commonwealth's contention is incorrect: In *Hale*, the appellant argued the trial court erred when it denied his challenge to excuse, for cause, a prospective juror who "had formerly worked as an investigator in the Philadelphia District Attorney's office and was a career law enforcement official." *Hale*, 85

A.3d at 576. However, the appellant in *Hale* merely claimed that the prospective juror's prior affiliation required that the court "**presume** the likelihood of prejudice." *Id.* (emphasis added) ("[a]ppellant asserts that the court should have presumed a likelihood of prejudice due to the prospective juror having previously worked for the very prosecutor who was prosecuting the case") (internal quotations and citations omitted).

In the case at bar, our holding is not based upon a "presumption of prejudice." Rather, it is based upon "the potential juror's likelihood of prejudice [as] exhibited by [her] conduct and answers to questions at [v]oir dire." *Colon*, 299 A.2d at 327.

the chain of custody … go to the weight of the evidence" and not to the sufficiency of the evidence supporting Appellant's convictions. *Commonwealth v. Dunston*, 496 Pa. 552, 437 A.2d 1178, 1179 (1981) ("[s]uffice it to say that any gaps in the chain of custody of the body go to the weight of the evidence and not to its admissibility"); *Commonwealth v. Free*, 902 A.2d 565, 573 n. 6 (Pa.Super.2006) ("[the defendant] complains that the discrepancies between the reports and the photographs, coupled with the absence of the evidence itself, leaves questions as to whether the marijuana depicted in the photographs was actually the evidence seized from Appellee in this case .... [I]ssues regarding chain of custody concern the 'weight that is to be afforded evidence' and so would not be a proper consideration in a motion to dismiss based on due process.").

Judgment of sentence vacated. Case remanded. Jurisdiction relinquished.