J-S03010-18

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

COMMONWEALTH OF PENNSYLVANIA   :   IN THE SUPERIOR COURT OF
      :           PENNSYLVANIA
      :
      v.      :
      :
      :
WALTER JOHN SARVIS       :
      :
      Appellant      :   No. 2717 EDA 2016

Appeal from the Judgment of Sentence July 7, 2016
In the Court of Common Pleas of Delaware County Criminal Division at
No(s):  CP-23-CR-0004990-2015

BEFORE:   BENDER, P.J.E., PANELLA, J., and STEVENS*, P.J.E.

DISSENTING MEMORANDUM BY STEVENS, P.J.E.:     **FILED MAY 04, 2018**

The learned Majority holds that the trial court abused its discretion in denying Appellant's challenge for cause where Juror 17 initially expressed concerns that he might accord more weight to two witnesses he had known professionally for 20 years and considered trustworthy.  I disagree, as the juror's statements during *voir dire* were not marked by certitude, involved no display of emotion, revealed no close personal relationship or allegiance to the witnesses, and reflected no entrenched, fixed bias suggesting a likelihood of prejudice.  Instead, after identifying his own comments in this regard as "wavering," the juror stated his belief that he would be impartial, that he would hold the witnesses to the same test of credibility, and that he would evaluate the two witnesses fairly.

I discern from such an evolving self-analysis a juror who demonstrated a capacity to set aside his potential bias in order to render a fair and impartial

_____
\*   Former Justice specially assigned to the Superior Court.

verdict based on the complete body of evidence, which included far more than the testimonies of the two witnesses in question. For this reason, I must dissent.

> It must be remembered the purpose of the *voir dire* examination is to provide an opportunity to counsel to assess the qualifications of prospective jurors to serve. It is therefore appropriate to use such an examination to disclose fixed opinions or to expose other reasons for disqualification. Thus the inquiry must be directed at ascertaining whether the venireperson is competent and capable of rendering a fair, impartial and unbiased verdict. The law also recognizes that prospective jurors were not cultivated in hermetically sealed environments free of all beliefs, conceptions and views. *The question relevant to a determination of qualification is whether any biases or prejudices can be put aside upon the proper instruction of the court*.
>
> A challenge for cause to service by a prospective juror should be sustained and that juror excused where that juror demonstrates through his conduct and answers a likelihood of prejudice. The decision whether to disqualify a venireman is within the discretion of the trial court and will not be disturbed on appeal absent a palpable abuse of that discretion.

*Commonwealth v. Ingber*, 531 A.2d 1101, 1102–1103 (Pa. 1987) (internal quotations and citations omitted) (emphasis added). "The test of disqualification is the juror's ability and willingness to eliminate the influence of his scruples and render a verdict according to the evidence. This determination is to be made by the trial judge based on the juror's answers and demeanor. . . . *Commonwealth v. DeHart*, 516 A.2d 656, 663 (Pa. 1986) (internal citations, quotations, and corrections omitted). This Court shall not reverse the trial court's determination in this regard absent a palpable abuse of discretion. *Id*.

The majority relies on ***Commonwealth v. Johnson***, 445 A.2d 509 (Pa. Super. 1982) and ***Commonwealth v. Penn***, 132 A.3d 498 (Pa. Super. 2016) to conclude that the trial court should have excused Juror 17 for cause. A review of both decisions shows them to be distinguishable from the present case.

In ***Johnson***, a prospective juror admitted the facts of the case before him evoked strong emotions he believed would compromise his ability to be impartial at trial. Specifically, the juror explained during *voir dire* that his daughter had been the victim of a rape and robbery bearing some important similarities with the facts of ***Johnson***. The juror became emotional during the proceeding and confided with the court "I didn't realize how strongly I feel about this and that if I consider that, I'm not what I thought I was [with respect to] trying to be fair and consider the evidence in such a case . . . ." ***Id***. at 512.

When the court asked him if he believed he would be fair, particularly where the facts here did not involve a sex crime, the juror replied it would be difficult to be fair "because I can see how I'm reacting. I didn't realize how strongly I felt about this. . . . [A]t the last moment this [the sex crime] is what the robbers did [to his daughter]." ***Id***. To the court's follow-up question of whether the juror would persist in this mindset even if the court instructed him that it would be improper to allow such emotions to infiltrate his assessment of facts, the juror answered, "I realize that, logically. It should not be so but I could see emotionally, I can see that I don't have full control

in that case, because as I said, I didn't realize how strong it was in relating it to you and I didn't expect myself to break down, practically." *Id*. at 513.

The court continued to engage the juror in a lengthy exchange in which he counseled the juror on the importance of appreciating the difference between the two cases and committing himself to controlling emotional reactions to evidence so they would not impede his ability to make fair and impartial credibility determinations in the present case. "That's the question[,]" the court asked, "[c]an you be fair?" *Id*. The juror responded that he could be fair, and the court later refused to excuse the juror for cause.

On appeal, this Court reversed, given the "considerable distress" the juror clearly felt at the prospect of sitting in judgment over a case bearing similarities to a violent crime his daughter had endured. We reasoned:

> Mr. Rubin vividly demonstrated during *voir dire* that he would be likely not to be an impartial juror. He not only visibly manifested emotional distress but specifically expressed substantial doubts about his ability to be impartial at least five times. Although he acknowledged that "logically" he could separate the robbery and rape of his daughter from the robbery of appellant's victims, he added at once that "emotionally, I can see that I don't have full control."

*Id.* at 514.

Moreover, given the juror's deep-seated emotional reaction to the charges and his repeated admissions that he doubted his ability to overcome such emotions and deliberate impartially, his eventual assurance to the court that he would "'[b]e fair' did not dispel the force of these admissions[,]" we concluded.

In **Penn**, it was undisputed that the Commonwealth's entire case depended upon the testimony of two police detectives. Juror R.Z. had made a career in law enforcement and security, and her boyfriend was a municipal police officer. When asked if she was "steeped in law enforcement" and whether she "would be more likely to believe the testimony of a police officer," she answered a definitive "yes" to both questions. Similarly, to the question "Would it be hard for you not to believe [the police officers slated to testify in the case,]" R.Z. answered, "I feel like I would be more inclined to believe them, yes." **Id.** at 500.

Later, however, R.Z. confirmed that she could follow instructions not to give police any more weight or credibility, and to the question of whether she could render a fair and impartial decision, R.Z. answered, "I would think so, yes." **Id**. Nevertheless, R.Z. soon reverted to her original position, nodding her head in the affirmative when defense counsel asked her "would it be hard for you not to believe them because of your experience?" She qualified her answer, however, saying "I mean—again, I think it comes down to the evidence though." **Id.** at 501. Afterward, the trial court denied the defense challenge to excuse R.Z. for cause.

Critical to our decision to reverse in **Penn** were two features to the matter. First, we observed, "the Commonwealth's entire case rested upon the credibility of the police officers, given that the Commonwealth's only two witnesses at trial were City of Pittsburgh Police detectives." **Id.** at 504. This placed in sharp relief R.Z.'s assured, unequivocal answer of "yes" to the

question put to her both in the written questionnaire and again in open court during *voir dire*, "[w]ould you be more likely to believe the testimony of a police officer or any other law enforcement officer because of his or her job?" We found the certitude of these answers "indicat[ed] that R.Z. was biased in favor of the police and the Commonwealth." ***Id.***

Second, "as was true in ***Johnson***, R.Z.'s admitted bias in favor of the police rested on a firm bedrock, given that R.Z. testified [to an extensive work history in law enforcement and to a present romantic relationship with a police officer from a nearby municipality.]" ***Id.*** at 505. This intrinsic partiality came to the fore not only in R.Z.'s initial answers during *voir dire*, but also in her testimony immediately following her assurance to the court that she could render a fair and impartial decision pursuant to jury instructions, when she again declared that "because of [her] experience[,] . . . [she] would be inclined to believe" the police. ***Id***.

In contrast to ***Johnson*** and ***Penn***, there is no indication in the case *sub judice* that Juror 17 harbored strong emotions about, or deep-seated loyalties to, the two prospective witnesses because they were educators. Instead, he stated their examples of workplace honesty over the course of many years carried weight with him. Unlike in ***Johnson***, we cannot infer from the record that Juror 17 delivered this statement in anything other than a dispassionate manner, nor did he offer swift, definitive answers, as the juror did in ***Penn***, that he would likely believe what they said. Indeed, he accurately described his own responses to questions on the issue as "wavering," before he settled

on the position that he could evaluate the witnesses fairly and render an impartial decision.

As such, Juror 17's answers during *voir dire* did not betray a fixed disposition to favor the educators' respective testimonies at trial. Instead, they reflected a composed respect for two witnesses he knew to be honest persons, which Juror 17 tempered with his repeated assertion that he would nevertheless base his determinations on an even-handed assessment of all evidence admitted at trial.

The governing standard of review in cases such as this accepts that prospective jurors may come to the court with certain biases and still be suitable for jury duty. That is to say, the existence of a bias does not necessarily mandate removal for cause. Instead, the test is whether the juror exhibits an ability to set aside the bias and render a fair and impartial decision in the matter at hand. **See Ingber**, **supra**. In **Johnson** and **Penn**, removal of the jurors in question was required because they held entrenched predispositions that placed squarely in doubt their abilities to evaluate the evidence impartially. The same concerns simply do not arise from the record before us.

Moreover, unlike in **Penn**, the Commonwealth's entire case did not rest upon the testimonies of the two educators. Although they did relate the child's incriminating statements made in school, many other sources of incriminating evidence—including the now 11 year-old victim who consistently described her sexual abuse throughout the investigation, her mother, two CYS caseworkers,

a police detective, and a forensic interview specialist for the Child Advocacy Center—were expected at trial, thus alleviating concerns that Juror 17's long-standing respect for the two educators would render him incapable of viewing the evidence impartially.

Accordingly, I find no abuse of discretion in the trial court's denial of Appellant's challenge for cause, as the record does not support the conclusion that Juror 17 exhibited a fixed bias in favor of two Commonwealth witnesses producing a likelihood of prejudice on his part. For this reason, I respectfully dissent.