J-A15043-19

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

COMMONWEALTH OF PENNSYLVANIA : IN THE SUPERIOR COURT OF
: PENNSYLVANIA
:
v. :
:
:
STERLING RAY ROBINSON :
:
Appellant : No. 2487 EDA 2018

Appeal from the PCRA Order Entered July 24, 2018
In the Court of Common Pleas of Delaware County Criminal Division at
No(s): CP-23-CR-0003450-2011

BEFORE: BENDER, P.J.E., GANTMAN, P.J.E., and COLINS, J.*

MEMORANDUM BY COLINS, J.: **FILED AUGUST 06, 2019**

Appellant, Sterling Ray Robinson, *pro se*, appeals from the order entered
July 24, 2018, denying his first petition filed under the Post Conviction Relief
Act (PCRA).[1] We affirm.

On March 14, 2012, Appellant was convicted following a jury trial of
robbery, possessing an instrument of crime (PIC), and providing false
identification to law enforcement authorities[2] relating to an incident in which
Appellant robbed the 84-year old owner of a beer distributorship in Darby,
Pennsylvania. This Court previously summarized the facts as set forth at trial
as follows:

---

[1] 42 Pa.C.S. §§ 9541–9546.

[2] 18 Pa.C.S. §§ 3701(a)(1)(ii), 907(a), and 4914(a), respectively.

---

* Retired Senior Judge assigned to the Superior Court.

[O]n April 11, 2011, at approximately 2:00 p.m., [Yolanda] Acquarola was working alone at the beer distributorship that she owned and operated when Appellant entered the store. N.T. Trial, 3/13/12, at 10. Appellant asked her where he could find a certain brand of beer, and she directed him to the back of the store. *Id.* After retrieving his beer, Appellant returned to the front of the store where Mrs. Acquarola was waiting. *Id.* at 20. As he put the case of beer down, he stated, "give me all your money." *Id.* at 21. Mrs. Acquarola testified that "the next thing [she knew]," Appellant placed a "black metal thing on [her] head." *Id.* While she did not see what the object was because Appellant moved very quickly, "the thought went through [her] mind" that it was a gun. *Id.* at 21–22. Mrs. Acquarola testified that she "was petrified" and thought that the object pressed to her head "was going to explode." *Id.* at [22,] 37. While the object was still against her head, she handed Appellant two wads of money that she had in her pockets. *Id.* at 22, 25. Appellant then stated, "give me the rest of it," to which Mrs. Acquarola replied that she did not have any more. *Id.* Mrs. Acquarola was then able to maneuver away from Appellant and ran out the back of the store screaming for help, while Appellant fled out the front door. *Id.* at 22.

Appellant was apprehended a short time after the robbery and approximately [seven] blocks away from the beer distributorship. *Id.* at 30. Mrs. Acquarola was taken to the location where Appellant was detained and identified him as the perpetrator of the robbery. *Id.* Appellant was found to be in possession of two wads of money, which Mrs. Acquarola identified as that which she had handed to Appellant during the commission of the crime. *Id.* at 33. Additionally, during a pat down of Appellant's person, police officers discovered [] a black canister of mace in his pocket. *Id.* at 129.

*Commonwealth v. Robinson*, No. 1878 EDA 2012, unpublished memorandum at 3-4 (Pa. Super. filed August 26, 2013). On June 6, 2012,

- 2 -

the trial court imposed an aggregate sentence of 10 to 20 years of imprisonment followed by 6 years of probation.[3]

Appellant filed a timely notice of appeal of the judgment of sentence; in his appeal, Appellant challenged the sufficiency of the evidence to support his robbery conviction. On August 26, 2013, this Court issued a memorandum decision affirming the judgment of sentence. *Id.* at 5-6. Appellant filed a petition for allowance of appeal from the order of the Superior Court, which our Supreme Court denied on February 26, 2014. ***Commonwealth v. Robinson***, 83 A.3d 1073 (Pa. 2014) (table).

On February 24, 2015, Appellant filed, *pro se*, the instant timely PCRA petition, in which he raised nine claims of ineffective assistance of counsel. On March 2, 2015, the PCRA court ordered that counsel be appointed to represent Appellant and directed counsel to file an amended petition on Appellant's behalf.

On October 31, 2017, Appellant's PCRA counsel filed a petition to withdraw as counsel and a "no merit" letter pursuant to ***Commonwealth v. Geary Turner***, 544 A.2d 927 (Pa. 1988), and ***Commonwealth v. Finley***,

---

[3] Appellant was sentenced to 10 to 20 years of imprisonment on the robbery charge, 5 years of probation on the PIC charge consecutive to the term of imprisonment, and an additional 1-year, consecutive term of probation on the false identification charge. Certification of Imposition of Judgment of Sentence, 6/6/12; N.T., 6/12/12, at 15-16. Appellant received a 10-year mandatory minimum sentence pursuant to 42 Pa.C.S. § 9714 as a result of his second conviction of a crime of violence as defined in that statute. Certification of Imposition of Judgment of Sentence, 6/6/12; N.T., 6/12/12, at 15.

550 A.2d 213 (Pa. Super. 1988) (*en banc*). Prior to the PCRA court's action on the petition to withdraw, on December 14, 2017, Appellant filed a *pro se* motion to allow him to represent himself through the PCRA proceedings and for leave to amend his PCRA petition. The PCRA court then scheduled a hearing on the petition to withdraw and Appellant's motion to represent himself and amend his petition. Following the hearing, on March 1, 2018, the PCRA court issued an order dismissing Appellant's motion on the grounds that counsel's petition to withdraw remained pending and the motion created a hybrid representation that nullified the court's ability to rule on the motion.

On March 20, 2018, the PCRA court filed a notice of intent to dismiss the PCRA petition without a hearing in 20 days and granted PCRA counsel leave to withdraw from representation of Appellant. On July 17, 2018, the PCRA court entered an order dismissing the PCRA petition as meritless. This order contained a typographical error, and therefore the PCRA court reissued a substantively identical order dismissing the PCRA petition on July 24, 2018. Appellant filed, *pro se*, a notice of appeal of the order dismissing his PCRA petition on August 20, 2018.[4]

Appellant raises five issues on appeal relating to the PCRA court's determination that his trial counsel provided effective assistance of counsel.[5]

---

[4] Appellant filed his statement of errors complained of on appeal on November 8, 2018. The trial court filed its opinion on November 20, 2018.

[5] Appellant also argues in his brief that his appellate counsel in his direct appeal provided ineffective assistance of counsel with respect to each of the

We review the denial of a PCRA petition to determine whether the record supports the PCRA court's findings and whether its decision is free of legal error. **Commonwealth v. Lavar Brown**, 196 A.3d 130, 150 (Pa. 2018).

> When supported by the record, the PCRA court's credibility determinations are binding on this Court, but we apply a *de novo* standard of review to the PCRA court's legal conclusions. We must review the PCRA court's findings and the evidence of record in a light most favorable to the Commonwealth as the winner at the trial level.

**Id.** (internal citation omitted).

To be entitled to relief under the PCRA on a claim of ineffective assistance of counsel, the convicted defendant must prove:

> (1) the underlying legal claim is of arguable merit; (2) counsel's action or inaction lacked any objectively reasonable basis designed to effectuate his client's interest; and (3) prejudice, to the effect that there was a reasonable probability of a different outcome if not for counsel's error.

**Commonwealth v. Medina**, 2019 PA Super 119, *15 (filed April 17, 2019). The defendant must satisfy all three prongs of this test to obtain relief under the PCRA. **Id.**

In his first issue, Appellant argues that his trial counsel was ineffective for not challenging the prosecutor's assertion that he was not in possession of a transcript of Mrs. Acquarola's 911 call to report the robbery. Appellant

---

five issues presented herein. Appellant, however, did not raise any ineffective assistance issues with respect to his appellate counsel in his statement of errors complained of on appeal, and therefore such arguments are waived. **See** Pa.R.A.P. 1925(b)(4)(vii); **Commonwealth v. Proctor**, 156 A.3d 261, 267 (Pa. Super. 2017).

maintains that the Commonwealth was in fact in possession of the transcript and purposefully withheld it from the defense. Prior to trial, Appellant raised his concerns regarding the production of the 911 log, and the Commonwealth represented that it was not in possession of a recording of the 911 call, did not order a transcription of the call, and that, approximately 11 months after the trial, it did not believe that any transcript, recording, or report of the call existed. N.T., 3/12/12, at 12-13. The Commonwealth had no obligation to produce any evidence that was not within its possession, custody, or control. *See, e.g.*, Pa.R.Crim.P. 573(B)(1)(a) (providing that the Commonwealth shall disclose, on demand, all evidence favorable to the accused "within the possession or control of the attorney for the Commonwealth"). In any event, Appellant's trial counsel did obtain a chronological log of the 911 call, used the log to cross examine Mrs. Acquarola, and argued in closing that Mrs. Acquarola's statements during the call undermined her identification of Appellant.[6] N.T., 3/13/12, at 46-49, 51-52, 53-54, 56-58; N.T., 3/14/12, at 23-24, 26-27. Appellant has accordingly not demonstrated prejudice based on any failure to obtain a transcript of the 911 call from the prosecutor.

Appellant next argues that his trial counsel was ineffective for failing to file a motion to suppress "to test the Affidavit of Probable cause [to show that it] held no merit." Appellant's Brief at 11. The affidavit describes Mrs.

---

[6] Appellant's counsel attempted to introduce the log into evidence, but the trial court sustained the objection on the grounds that it had not been authenticated. N.T., 3/14/12, at 14-15.

- 6 -

Acquarola's narrative of the robbery, the stop of Appellant by Chief Robert Smythe of the Darby Borough Police Department, the show-up identification of Appellant by Mrs. Acquarola, and the recovery from Appellant of the money taken from Mrs. Acquarola and a can of pepper spray. Criminal Complaint, 4/12/11. Appellant has not identified any evidence that he seeks to have suppressed as a result of such a motion, and therefore he has not shown prejudice from his trial counsel's decision not to file the motion. Moreover, prior to trial, Appellant's counsel stated that he did not believe that there were any grounds to seek the suppression of the affidavit of probable cause, N.T., 3/12/12, at 8, a statement which the PCRA court credited and concluded demonstrated that there was a reasonable basis to not file the suppression motion. PCRA Court Opinion at 13-14. Finally, we note that none of Appellant's alleged discrepancies in the affidavit of probable cause withstand scrutiny.[7] Therefore, we agree with the PCRA court that Appellant's second

---

[7] Appellant identifies three alleged inconsistencies in the affidavit: (i) that the flash information in the affidavit indicated that he was 5'6" in height when he is in fact 5'10" in height, (ii) that the affidavit states that Ms. Acquarola identified him as a black male when she testified at trial that she did not identify the race of her assailant in her 911 call, and (iii) that Ms. Acquarola identified the perpetrator as wearing yellow shorts, while he was in fact wearing beige shorts. First, as to the issue regarding Appellant's height, the affidavit states that Ms. Acquarola reported that the perpetrator was 5'10", not 5'6", in height. Second, Ms. Acquarola did not testify that she definitely did not identify the perpetrator's race in the 911 call, but instead only that she was so upset after the robbery that she was not sure what she told the 911 operator. N.T., 3/13/12, at 29-30, 66. Finally, while Ms. Acquarola acknowledged that she appeared to have stated that she identified the perpetrator as wearing yellow, rather than beige, shorts, Appellant's trial

- 7 -

issue lacks arguable merit and his trial counsel had a reasonable basis for not filing a motion to suppress the affidavit of probable cause.

In his third issue, Appellant contends that his trial counsel was ineffective for not filing a motion to suppress the show-up identification. Appellant argues that the identification was inherently suggestive and violated his due process rights because he was identified while handcuffed and without counsel present. Appellant's trial counsel explained at the outset of trial that he did not believe that there was any basis for suppression and instead he requested a line-up identification, in which Mrs. Acquarola did not successfully identify Appellant. N.T., 3/12/12, at 8, 10; N.T., 3/13/12, at 61-64. Therefore, trial counsel concluded that this issue was one of witness credibility rather than suppression. N.T., 3/12/12, at 8, 10. The PCRA court credited this statement and concluded that trial counsel had a reasonable basis for not seeking suppression of the show-up identification. PCRA Court Opinion at 13-14. We agree with the trial court's conclusion.

We further conclude that Appellant's third issue lacks arguable merit. "In reviewing the propriety of identification evidence, the central inquiry is whether, under the totality of the circumstances, the identification was reliable." *Commonwealth v. Marcus Brown*, 23 A.3d 544, 558 (Pa. Super. 2011) (*en banc*) (citation omitted). An out-of-court identification will be suppressed only "where, after considering all the relevant circumstances, the

---

counsel vigorously cross-examined Ms. Acquarola on this point and argued this issue in closing. *Id.* at 46-50; N.T., 3/14/12, at 19-21, 23, 30, 36.

facts demonstrate that the identification procedure was so impermissibly suggestive as to give rise to a very substantial likelihood of irreparable misidentification." **Commonwealth v. Milburn**, 191 A.3d 891, 900 (Pa. Super. 2018) (citation, quotation marks, and emphasis omitted). "Our Supreme Court has held that on-scene identifications are not only consistent with due process but also enhance the reliability of identifications as they occur when events are fresh in a witness's mind." **Id.** at 899 (citing **Commonwealth v. Edward Turner**, 314 A.2d 496, 498–99 (Pa. 1974)).

The show-up identification in this matter took place when Mrs. Acquarola was driven in a police vehicle to the location where Appellant was detained approximately seven blocks from the beer distributorship; Mrs. Acquarola remained in the police vehicle and viewed Appellant from a distance of approximately 8 to 10 feet. N.T., 3/13/12, at 102-03, 133, 142-43, 187. The record is inconclusive regarding whether Appellant was handcuffed at the time of the show-up identification. **Id.** at 33, 103, 133, 142, 180. In any event, this Court has upheld identifications conducted under similar situations where the suspect was handcuffed. **Milburn**, 191 A.3d at 900; **Marcus Brown**, 23 A.3d at 559. Furthermore, "[i]n Pennsylvania, the right to counsel attaches at the time of arrest, and exists for identification confrontations occurring after arrest, except prompt on-the-scene confrontations." **Commonwealth v. Minnis**, 458 A.2d 231, 234 (Pa. Super. 1983). The trial testimony reflects that the show-up identification here occurred promptly after Appellant's apprehension, in a location close in proximity to the scene of the crime, and

that Appellant was not arrested until after he was identified by Mrs. Acquarola. N.T., 3/13/12, at 102-03, 133, 142-43, 186-87.

Appellant argues in his fourth issue that his trial counsel was ineffective for not further questioning prospective juror number 10, who was eventually seated on the trial jury as juror number 4, after the juror stood to indicate her affirmative response to the following *voir dire* question: "[H]ave you, or has a member of your family or a close friend ever been the victim of or accused of a crime similar to those with which [Appellant] is charged?" N.T., 3/12/12, at 42. Appellant contends that the lack of follow-up questions to address juror number 4's response to this question demonstrated potential bias or impartiality in the jury weighing his guilt or innocence.

This issue is waived because it was not raised in Appellant's *pro se* PCRA petition, nor did Appellant amend his PCRA petition to include this issue.[8] **See**

---

[8] Following the filing of PCRA counsel's no-merit letter, Appellant did in fact file a motion to represent himself through the remainder of the proceeding and to amend his PCRA petition to include unspecified additional arguments. The PCRA court denied this motion, concluding that to permit the filing would constitute hybrid representation as the court had not yet permitted PCRA counsel to withdraw. This conclusion appears to have been in error as the rule prohibiting hybrid representation was no longer applicable once PCRA counsel indicated his intent to withdraw. **See Commonwealth v. Ford**, 44 A.3d 1190, 1198 n.4 (Pa. Super. 2012) ("When counsel files a **Turner/Finley** no-merit letter and counsel has not yet been permitted to withdraw, the rule against hybrid representation is inapplicable, as the petitioner can file a *pro se* response."). However, Appellant had ample opportunity to renew his filing seeking to amend the PCRA petition from March 20, 2018, the date that the PCRA filed the Pa.R.Crim.P. 907 notice and permitted PCRA counsel's withdrawal, until July 17, 2018, the date when the PCRA court entered its order dismissing the PCRA petition. Therefore, even if

Pa.R.Crim.P. 902(B) ("Each ground relied upon in support of the relief requested shall be stated in the petition. Failure to state such a ground in the petition shall preclude the defendant from raising that ground in any proceeding for post-conviction collateral relief."); ***Commonwealth v. Mason***, 130 A.3d 601, 627 (Pa. 2015). Even if this issue were not waived, however, we would conclude that Appellant has not demonstrated a meritorious ineffective assistance of counsel claim.

A criminal defendant's right to an impartial jury is guaranteed by Article I, Section 9 of the Pennsylvania Constitution, and the jury selection process is a crucial preservation of that right. ***Commonwealth v. Penn***, 132 A.3d 498, 502 (Pa. Super. 2016). The *voir dire* examination process serves the essential function of assessing the qualifications of prospective jurors, and the inquiry must be directed at ascertaining whether the prospective juror is competent and capable of rendering a fair, impartial, and unbiased verdict. ***Id.*** "The law also recognizes that prospective jurors were not cultivated in hermetically sealed environments free of all beliefs, conceptions and views. The question relevant to a determination of qualification is whether any biases or prejudices can be put aside upon the proper instruction of the court." ***Id.*** (citation omitted). The defendant bears the burden of showing that the jury was not impartial. ***Commonwealth v. Smith***, 206 A.3d 551, 562-63 (Pa. Super. 2019).

---

the PCRA Court's initial denial of Appellant's attempt to amend his PCRA petition was in error, Appellant was not prejudiced by this determination.

The PCRA court concluded that, even if Appellant had satisfied the first two prongs of the ineffective assistance of counsel test, he had not demonstrated prejudice. PCRA Court Opinion at 14-15. The PCRA court noted that Appellant's appointed PCRA counsel stated in his no merit letter that he had attempted to locate juror number 4 but was unable to do so and that in the absence of potential testimony from that juror, prejudice could not be established. *Id.* at 15; PCRA Counsel's No Merit Letter, 10/31/17, at 9-10.

We agree with the PCRA court's conclusion that no prejudice was demonstrated and that Appellant therefore cannot establish his ineffectiveness claim. *Medina*, 2019 PA Super 119, *15. In addition to the PCRA court's reasoning, we observe that after the trial court asked whether the prospective jurors or someone close to them had been guilty of a similar crime to the one charged, it then asked the prospective jurors whether they had been previously involved in a criminal proceeding in any fashion and whether the nature of the allegations would prevent them from being a fair and impartial juror. N.T., 3/12/12, at 44-45. The trial court then asked whether the jurors could follow the court's instructions that Appellant was presumed innocent, his arrest was not evidence of guilt, the Commonwealth bore the burden of proving guilt beyond a reasonable doubt, and no inference should be drawn from an accused's decision not to testify. *Id.* at 47-48. Juror number 4 did not stand in response to any of those questions. *Id.* at 44-45, 47-48.

In his final issue, Appellant argues that his trial counsel was ineffective for not objecting to the prosecutor's closing argument, in which he made the following statement:

> So let me ask you this, a man wearing a green shirt or having a green shirt, light colored shorts, covered in sweat, seven blocks away. Is it reasonable to conclude [Appellant] was sweating for a reason[?] That he hauled ass away from [the beer distributorship] as fast as he could back to Philadelphia, Pennsylvania. . . . I am just going to ask you to infer he was getting away from [the beer distributorship] as fast as he could.

N.T., 3/14/12, at 48-49. Appellant contends that this argument was based on facts not in evidence, namely that he was running towards Philadelphia, and in fact was contrary to the testimony of Chief Smythe that Appellant was not running when Chief Smythe detained him. N.T., 3/13/12, at 85 ("He was just walking, I mean it was he wasn't running, he was walking along . . .").

Our Supreme Court has explained the legal standards with respect to a claim that a prosecutor engaged in misconduct with respect to commentary made during summation as follows:

> To succeed on such a claim, [a defendant is] required to demonstrate that the prosecutor's comments violated a constitutionally or statutorily protected right, such as the Fifth Amendment privilege against compulsory self-incrimination or the Sixth Amendment right to a fair trial, or a constitutional interest such as due process. To constitute a due process violation, the prosecutorial misconduct must be of sufficient significance to result in the denial of the defendant's right to a fair trial. The touchstone is the fairness of the trial, not the culpability of the prosecutor.
>
> A prosecutor may make fair comment on the admitted evidence and may provide fair rebuttal to defense arguments. . . . Any

challenge to a prosecutor's comment must be evaluated in the context in which the comment was made.

Not every unwise, intemperate, or improper remark made by a prosecutor mandates the grant of a new trial. Reversible error occurs only when the unavoidable effect of the challenged comments would prejudice the jurors and form in their minds a fixed bias and hostility toward the defendant such that the jurors could not weigh the evidence and render a true verdict.

While it is improper for a prosecutor to offer any personal opinion as to the guilt of the defendant or the credibility of the witnesses, it is entirely proper for the prosecutor to summarize the evidence presented, to offer reasonable deductions and inferences from the evidence, and to argue that the evidence establishes the defendant's guilt. . . . The prosecutor must be free to present his or her arguments with logical force and vigor, and comments representing mere oratorical flair are not objectionable.

*Commonwealth v. Burno*, 94 A.3d 956, 974 (Pa. 2014) (internal citations, quotation marks, and brackets omitted).

The PCRA Court concluded that the prosecutor's comments "were fair assertions from the facts established" and that Appellant had therefore not demonstrated arguable merit to his claim. PCRA Court Opinion at 13. We concur in this conclusion. The testimony of Chief Smythe was clear that, though the events at issue occurred on a pleasant spring day, Appellant was "sweating profusely, like he had just gotten out of the shower" when Chief Smythe detained him, and both of the other two officers who testified at trial corroborated this observation. N.T., 3/13/12, at 81, 85; *see also id.* at 93, 121, 132, 136, 141, 181-82, 187. While Chief Smythe testified that Appellant was walking when Chief Smythe first observed him, *id.* at 85, Chief Smythe also stated that he detained Appellant at a location approximately eight or

nine blocks[9] from the beer distributorship less than five minutes after the robbery and that he could not rule out that Appellant was sweating because he had been previously running. *Id.* at 84, 92-93. In addition, testimony at trial indicated that Appellant was walking in the direction of his home in Philadelphia, located a short distance across the border with Darby Borough. *Id.* at 79, 94, 119-20, 172. The prosecutor's statement that Appellant "hauled ass away from" the beer distributorship towards Philadelphia and "he was getting away . . . as fast as he could" was therefore a reasonable inference from the evidence based on the trial testimony that Appellant was sweating profusely, walking towards Philadelphia where he lived, and had apparently covered a large distance in approximately five minutes. Therefore, Appellant's allegation of prosecutorial misconduct is without merit, and his trial counsel cannot be found ineffective for failing to raise a meritless claim. *Medina*, 2019 PA Super 119, *15.

Based on the foregoing, Appellant is not entitled to relief.

Order affirmed.

---

[9] Another officer testified that Chief Smythe detained Appellant approximately seven blocks away from the beer distributorship. N.T., 3/13/12, at 133. Mrs. Acquarola stated that Appellant was detained four or five blocks from her store. *Id.* at 30.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 8/6/19