445 A.2d 509

**COMMONWEALTH of Pennsylvania**

v.

**Johnnie S. JOHNSON, Appellant.**

Superior Court of Pennsylvania.

Submitted Feb. 23, 1981.

Filed May 7, 1982.

Petition for Allowance of Appeal Denied Sept. 9, 1982.

174

Elaine DeMasse, Assistant Public Defender, Philadelphia, for appellant.

Gaele McLaughlin Barthold, Assistant District Attorney, Philadelphia, for Commonwealth, appellee.

Before SPAETH, WIEAND and JOHNSON, JJ.

SPAETH, Judge:

This is an appeal from judgments of sentence for criminal conspiracy, robbery, possession of an instrument of crime, and simple assault. Appellant argues that the lower court erred (1) in refusing to suppress his statement; (2) in refusing to excuse for cause two prospective jurors; and (3) in sentencing him for both conspiracy and possession of an

instrument of crime. We have concluded that the lower court did not err in refusing to suppress appellant's statement but that at least one of the two prospective jurors should have been excused for cause. We therefore order a new trial, at which appellant's statement may be admitted. Because of this disposition, we do not reach appellant's third argument.

–1–

In arguing that his statement should have been suppressed, appellant says that "[w]hile the police were searching him, one officer asked appellant a question to which appellant made a direct response." Appellant's Brief at 11. Before we discuss the merits of this argument, we note that the evidence is in conflict on exactly what appellant replied to the officer's question, and, indeed, on whether there was a question at all. Appellant himself testified on both direct and cross examination that he could not remember having any conversation with the arresting officers. N.T. 3/27/79, 171, 209. However, one of the officers testified as follows:

Q: How was he arrested?

A: Well, after observing him standing there, we pulled up to the curb, stopped our vehicle, maybe approximately three to four feet from him and I called to him. I said, "Hey Johnnie." He turned to us and said, "Yes." At this point, I said, "Don't move." At the same time, we were exiting our vehicle. We got out, went over to Mr. Johnson, my partner frisked Mr. Johnson while I kept him covered and I next said to Mr. Johnson, "Is your name Johnnie Johnson?" and his reply was, "No." At this point my partner proceeded to put the handcuffs on Mr. Johnson. I said to Mr. Johnson, "You are wanted." He asked me at this point, "What for?" I said, "There is a warrant that says robbery."

N.T. 3/26/79, 136–137.

If we assume, as appellant seems to do in his brief, that the arresting officer's version of the arrest is accurate, still, the lower court did not err in refusing appellant's motion to suppress his reply to the officer. Statements

given in response to preliminary questions, such as questions about name and age, are not as a general rule within the purview of *Miranda v. Arizona*, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966), for at least in most cases, such questions are not intended or expected to elicit an incriminating response, *Commonwealth v. Davis*, 460 Pa. 37, 331 A.2d 406 (1975), *Commonwealth v. Yount*, 455 Pa. 303, 314 A.2d 242 (1974), and the answers are not incriminating or prejudicial to the defendant, *Commonwealth v. Rodgers*, 472 Pa. 435, 372 A.2d 771 (1977). Here, both reasons apply. The officers asked appellant his name not to elicit an incriminating response but to determine whether he was the person named in the arrest warrant. Appellant's response that his name was not Johnnie Johnson was not prejudicial to him, for as appellant admits, "[R]egardless of his answer, the police were going to take him in, in light of their 'photographic identification' and appellant's affirmative response when addressed as 'Johnnie.'" Appellant's Brief at 17.

■ Since appellant's response was not incriminating, it was not obtained in violation of his right to counsel. *United States v. Henry*, 447 U.S. 264, 100 S.Ct. 2183, 65 L.Ed.2d 115 (1980) (right to counsel violated where government deliberately elicited incriminating information from defendant through cellmate). For the same reason, the rule of *Commonwealth v. Davenport*, 471 Pa. 278, 370 A.2d 301 (1977), was not violated. *Commonwealth v. Rhem*, 283 Pa.Superior Ct. 565, 424 A.2d 1345 (1980) (*Davenport* rule applies by its terms to inculpatory statements). Moreover, *Davenport* applies only to statements "obtained after arrest but before arraignment." *Commonwealth v. Davenport, supra*, 471 Pa. at 286, 370 A.2d at 306. Here, appellant's response was during, not after, his arrest. N.T. 3/26/79, 136–37, 139.

–2–

■ A prospective juror should be excused for cause in two situations:

The first is where the prospective juror indicates by his answers that he will not be an impartial juror.... The

second is where, irrespective of the answers given on voir dire, the court should presume the likelihood of prejudice on the part of the prospective juror because the potential juror has such a close relationship, be it familial, financial, or situational, with any of the parties, counsel, victims or witnesses.

*Commonwealth v. Stamm*, 286 Pa.Superior Ct. 409, 415–16, 429 A.2d 4, 7 (1981), *quoting Commonwealth v. Colon*, 223 Pa.Superior Ct. 202, 299 A.2d 326 (1972).

■ The standard of review differs, depending on which of these two situations is presented. In the first situation, "[M]uch depends upon the answers and demeanor of the potential juror as observed by the trial judge and therefore reversal is appropriate only in case of palpable error." *Commonwealth v. Colon*, 223 Pa.Superior Ct. 202, 207, 299 A.2d 326, 328 (1972) (footnote omitted). In the second situation, "[T]he determination is practically one of law and as such is subject to ordinary review." *Id.*

Sometimes a case will present the first situation, *see Commonwealth v. McBee*, 267 Pa.Superior Ct. 49, 405 A.2d 1297 (1979), sometimes the second, *see Commonwealth v. Jones*, 477 Pa. 164, 383 A.2d 874 (1978); *Commonwealth v. Stamm*, 286 Pa.Superior Ct. 409, 429 A.2d 4 (1981); *Commonwealth v. Rough*, 275 Pa.Superior Ct. 50, 418 A.2d 605 (1980). The two situations, however, are not mutually exclusive, and it is to be expected that some cases will present both situations. Thus a prospective juror may indicate by his answers on voir dire that he will not be impartial—the first situation—and the reason for his attitude may be that he has a particular relationship with someone involved in the case—the second situation. In *Commonwealth v. Davis*, 282 Pa.Superior Ct. 52, 422 A.2d 671 (1980), this court sitting *en banc* held that it was error not to ask, in some form, the question, "Have you or any member of your immediate family ever been the victim of a crime?" This question is not about only either the first or the second situation; it may disclose that the case presents both situations.

This case is just such a case as we have been discussing, for it presents both situations. One of the two prospective jurors, Herbert Rubin, indicated by his answers that he would not be impartial and the questioning disclosed that the reason for his attitude was a situational relationship.

Mr. Rubin's daughter had been the victim of a robbery; the robbers had then raped her. Appellant was on trial for robbery, simple assault, and possession of an instrument of crime. He was charged with having assaulted three persons in the course of the robbery, one of them a woman, whom he had knocked from a barstool and had picked up by the hair, threatening to kill her. The similarity between the violent robbery of his daughter and the violent robbery with which appellant was charged caused Mr. Rubin considerable distress. The record does not disclose just how this distress became manifest, although Mr. Rubin, describing his conduct, said, "I didn't expect myself to break down, practically." N.T. 11/20/79, 12.2. A side-bar conference was held, after which the following ensued:

THE COURT: Mr. Rubin, you related to me that—about an incident that occurred to your daughter and during that incident you were emotionally upset, and I was aware of your emotion and that concerns me, so I'm going to ask you that supposing in this case—supposing in this case there would be some evidence like similar to—supposing one of the witnesses would say that this man—this is a hypothetical question, that this man wouldn't do something to her, sexually, if he didn't give the money or something of that sort; would that so overwhelm and emote [sic] you that you would be overwhelmed as to your conscience so that you couldn't be fair to both sides?

MR. RUBIN: Not only in answer to what you said but *in thinking over my observation of my own reaction when I related this to you, I didn't realize how strongly I feel about this and if I consider that, I'm not what I thought I was* and trying to be fair and consider the evidence in such a case and—

THE COURT: You believe you would be fair?

MR. RUBIN: *I think it would be difficult because I can see how I'm reacting. I didn't realize how strongly I felt about this.*

THE COURT: The charges here are not involving sex at all.

MR. RUBIN: *I think just the fact that what happened to her* in such an unusual condition, I think also was a robbery but at the last moment this is what the robbers did.

THE COURT: Okay. Now, the fact that that happened in that case, which is certainly unrelated to the evidence in this case, I mean what happened in one instance in another case—on another case under different circumstances doesn't mean it happened in this case. You are to consider only the evidence in this case.

MR. RUBIN: That's what I realize and that's what I thought sitting there before and realizing, *thinking about it and realizing how I reacted just relating the incident signifies to me a much stronger—*

THE COURT: Will you react to somebody else being molested? Will you react to that?

MR. RUBIN: I think it would bring back to mind the things I imagined happened at the time with my daughter.

THE COURT: Even though I instruct you that that's not a proper way to deal with it?

MR. RUBIN: *I realize that, logically. It should not be so but I could see emotionally, I can see that I don't have full control* in that case, because as I said, I didn't realize how strong it was in relating it to you and I didn't expect myself to break down, practically.

THE COURT: When it involves your daughter, I can see it, and you're relating a story involving your daughter but when it involves another person and you're asked to be a Juror because that's what we do and—

MR. RUBIN: I realize that. *I'm wondering if I am able to do it.*

THE COURT: You have to determine that whether the evidence is true in the other case, when you looked at your

daughter, you said, well, my, why would my daughter go through this and what happened to your daughter, you can visualize as having happened but here you have to first determine whether it's true and then if you determine that, then you apply the law.

MR. RUBIN: I see.

THE COURT: So, you see it isn't every time that somebody says something that it's true. You have to determine that at first. Can you do that without being so upset as to impair your ability of making fair judgments?

MR. RUBIN: All right. I'll do that.

THE COURT: You must commit yourself to that endeavor, and if you have any reservations, we want to hear about it. We can't have to so emotionally blank because something happens to you that you can't think, so you can apply yourself in a fair way. I mean, you know yourself best. We all have some emotional feelings about our members of our family. The question is whether that emotional feeling which is unrelated to this matter can overwhelm your faculties so that you could no longer be fair and be objective about a situation that's unrelated. That's the question. Can you be fair?

MR. RUBIN: Yes.

THE COURT: In an unrelated matter?

MR. RUBIN: Yes.

THE COURT: I'm going to repeat that again and going to say that supposing the evidence in this case should, for some reason, be that one of the victims may say and he threatened to do something to me sexually if I didn't give him the money, for some reason, would that so emote you as to overwhelm your faculties that you could no longer be fair?

MR. RUBIN: No. I think I could.

THE COURT: Be fair?

MR. RUBIN: Be fair.

THE COURT: All right. You may take your seat.

N.T. 11/20/79, 10.2–15.2 (emphasis supplied).

 Not every familial or situational relationship will justify a finding that a prospective juror would be likely not to be impartial. *Commonwealth v. Stamm*, 286 Pa.Superior Ct. 409, 429 A.2d 4 (1981) (challenge for cause properly denied where prospective juror was aunt of member of district attorney's staff; the member was not the prosecutor); *Commonwealth v. Short*, 278 Pa.Superior Ct. 581, 420 A.2d 694 (1980) (challenge for cause properly denied where prospective juror knew of neighbor's child, not relative, who was victim of similar attack); *Commonwealth v. Rough*, 275 Pa.Superior Ct. 50, 418 A.2d 605 (1980) (challenge for cause properly denied where prospective juror had talked with neighbor about fact that local man had committed crimes charges); *Commonwealth v. Colon, supra* (challenge for cause properly denied where prospective juror was policeman with no "real relationship" to the case). Here, however, a member of the prospective juror's immediate family had been the victim of a similar crime. Although the fact that a prospective juror's close relationship has been a victim of crime will not result in prejudice in every case, *see United States v. Jones*, 608 F.2d 1004 (4th Cir. 1979), *cert. denied*, 444 U.S. 1086, 100 S.Ct. 1046, 62 L.Ed.2d 773 (1980) (declining to adopt a *per se* rule of disqualification where prospective juror related to victim of similar crime), the circumstances of this case are especially compelling. Mr. Rubin vividly demonstrated during voir dire that he would be likely not to be an impartial juror. He not only visibly manifested emotional distress but specifically expressed substantial doubts about his ability to be impartial at least five times. Although he acknowledged that "logically" he could separate the robbery and rape of his daughter from the robbery of appellant's victims, he added at once that "emotionally, I can see that I don't have full control."

Mr. Rubin's eventual assurance to the court that he would "[b]e fair" did not dispel the force of these admissions. *Commonwealth v. McBee, supra*, (voir dire shows venireman in murder case whose niece had been murdered had sincere and persistent doubts concerning ability to be fair despite

sincere assertion that he would try). This is particularly so in view of the court's questions, which Mr. Rubin may well have understood as suggesting that his proper response, and the response desired by the court, was to say, despite his doubts, that he would be an impartial juror. It is not the court's function to persuade a prospective juror to put aside doubts expressed, and explained, as earnestly as Mr. Rubin's were.

We therefore find the court's refusal to excuse Mr. Rubin for cause an abuse of discretion. This error was not harmless. Where, as here, a defendant is forced to use one of his peremptory challenges to excuse a prospective juror who should have been excused for cause, and then exhausts his peremptories before the jury is seated, a new trial will be granted. *Commonwealth v. Jones,* 477 Pa. 164, 383 A.2d 874 (1978) (error to refuse challenge for cause to prospective juror who was a policeman); *Commonwealth v. McBee, supra* (error to refuse challenge for cause to prospective juror who expressed substantial doubts concerning ability to be impartial).

The judgment of sentence is reversed and the case is remanded for a new trial consistent with this opinion.