J-A02030-20

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| PATRICK DALE MORLEY | : | |
| | : | |
| Appellant | : | No. 26 WDA 2019 |

Appeal from the Judgment of Sentence Entered December 21, 2018
In the Court of Common Pleas of Erie County Criminal Division at No(s):
CP-25-CR-0002072-2018

BEFORE:  SHOGAN, J., OLSON, J., and FORD ELLIOTT, P.J.E.

MEMORANDUM BY OLSON, J.:                    **FILED FEBRUARY 11, 2020**

Appellant, Patrick Dale Morley, appeals from the judgment of sentence entered on December 21, 2018, following his jury and bench trial convictions. We affirm.

The trial court accurately summarized the factual background of this case as follows:

> On June 9, 2018, Appellant [] was driving a 2004 Audi A4 registered to his girlfriend[, Loretta Weber].  At the intersection of Route 8 and Kuhl Road in Greene Township[, Pennsylvania,] Appellant rear-ended a 2005 Dodge Ram 1500, causing the truck to rollover.  Immediately after the accident[,] Appellant exited the [2004 Audi A4], reached in the back seat and grabbed a briefcase, and fled the scene on foot.  A cell phone in Appellant's name was recovered from the vehicle as well as clothing belonging to Appellant.  The briefcase was recovered from behind a nearby garage.  Inside the briefcase were drugs, including multiple bags of marijuana and a marijuana blunt, bags of cocaine, [] and LSD; drug paraphernalia including a digital scale, glass [pipe,] and plastic baggies; a switchblade knife; receipts for repairs to the 2004 Audi A4 bearing Appellant's name; two [American

Association of Retired Persons ("AARP")] cards bearing Appellant's name; a doctor's appointment note for Appellant; and Appellant's expired driver's license.  At the time of the accident[,] Appellant's driver's license was suspended.  Several weeks later, Appellant was found at a hotel [room] rented in his friend's name where he was arrested and charged.

On November 9, 2018, following a two-day jury trial, Appellant was convicted of: [] possession with intent to deliver (LSD);[1] [] possession with intent to deliver (cocaine);[2] [] possession with intent to deliver (marijuana);[3] [] [knowing and intentional] possession (LSD);[4] [] [knowing and intentional] possession (cocaine);[5] [] [knowing and intentional] possession (marijuana);[6] [] possession of small amount of marijuana for personal use;[7] [] possession of drug paraphernalia;[8] [] prohibited offensive weapons (switchblade knife);[9] [] accidents involving damage to attended vehicle or property;[10] [] drivers required to be licensed;[11] [] driving while operating privilege is

---

[1] 35 Pa.C.S.A. § 780-113(30).

[2] 35 Pa.C.S.A. § 780-113(30).

[3] 35 Pa.C.S.A. § 780-113(30).

[4] 35 Pa.C.S.A. § 780-113(a)(16).

[5] 35 Pa.C.S.A. § 780-113(a)(16).

[6] 35 Pa.C.S.A. § 780-113(a)(16).

[7] 35 Pa.C.S.A. § 780-113(a)(31)(i).

[8] 35 Pa.C.S.A. § 780-113(a)(32).

[9] 18 Pa.C.S.A. § 908(a).

[10] 75 P.S. § 3743(a).

[11] 75 P.S. § 1501(a).

suspended or revoked following ARD/DUI-related [offense];[12] [] following too closely;[13] [] driving at safe speed;[14] [] careless driving;[15] [] duty to give information and render aid;[16] [] and immediate notice of accident to police department.[17]

On December 21, 2018, Appellant was sentenced to an aggregate period of 87 – 174 months incarceration[,] followed by a probationary period[.] [This timely appeal followed.][18]

Trial Court Opinion, 3/7/19, at 1-2 (footnote and superfluous capitalization omitted) (footnotes added).

Appellant raises the following issues on appeal:

I. Whether the trial court committed an error of law and/or an abuse of discretion when it overruled [Appellant's]

_____

[12] 75 P.S. § 1543(b)(1).

[13] 75 P.S. § 3310(a).

[14] 75 P.S. § 3361.

[15] 75 P.S. § 3714(a).

[16] 75 P.S. § 3744(a).

[17] 75 P.S. § 3746(a)(1).

[18] Appellant filed a notice of appeal on January 3, 2019. On January 4, 2019, the trial court issued an order directing Appellant to file a concise statement of matters complained of on appeal pursuant to Pa.R.A.P. 1925(b)(1). Appellant timely complied. The trial court issued an opinion pursuant to Pa.R.A.P. 1925(a) on March 7, 2019. Subsequently, on May 22, 2019, Appellant filed an application for relief with this Court, requesting leave to amend his 1925(b) statement. Appellant's Application for Special Relief, 5/22/19, at 1-5. On May 29, 2019, this Court issued an order remanding the record to the trial court. Order, 5/29/19, at 1. Appellant filed an amended 1925(b) statement on June 7, 2019. The trial court issued an opinion pursuant to Pa.R.A.P. 1925(a) on August 15, 2019, which expressly incorporated its March 7, 2019 opinion.

challenges for cause to prospective jurors who answered "yes" to [Q]uestion 12 on the juror questionnaire?

II. Whether the trial court committed a reversible error of law and/or an abuse of discretion when it allowed the introduction of evidence provided to [] Appellant on the day of trial in violation of his right to due process?

III. Whether the Commonwealth failed to present sufficient evidence to find [] Appellant guilty beyond a reasonable doubt of possession with intent to deliver, possession of a controlled substance, and possession of drug paraphernalia [with respect to all three controlled substances, LSD, cocaine, and marijuana]?

Appellant's Brief at 3 (superfluous capitalization omitted).

First, Appellant argues that the trial court erred by overruling his for cause challenges to certain prospective jurors. Appellant's Brief at 8-12. Per Appellant, this resulted in a violation of his constitutional right to a fair and impartial jury. *Id.* We disagree.

"The process of selecting a jury is committed to the sound discretion of the trial judge and will be reversed only where the record indicates an abuse of discretion, and the appellant carries the burden of showing that the jury was not impartial." *Commonwealth v. Noel*, 104 A.3d 1156, 1169 (Pa. 2014) (plurality) (citation omitted). "The purpose of *voir dire* is to ensure the empaneling of a fair and impartial jury capable of following the instructions on the law as provided by the trial court." *Id.* at 1168. Where an appellant "has not demonstrated that the process deprived him of a fair and impartial jury, neither do we conclude that [he] suffered actual prejudice." *Id.* at 1172.

- 4 -

The question relevant to a determination of qualification is whether any biases or prejudices can be put aside upon the proper instruction of the court.

A challenge for cause to service by a prospective juror should be sustained and that juror excused where that juror demonstrates through his conduct and answers a likelihood of prejudice.

*Commonwealth v. Penn*, 132 A.3d 498, 502 (Pa. Super. 2016) (citation omitted).

Here, prior to trial, venirepersons completed the written juror information questionnaire, as required by Pa.R.Crim.P. 632.[19] Pursuant to Pa.R.Crim.P. 632(H), the following question was included:

12. Would you have any problem following the court's instruction that the defendant in a criminal case does not have to take the stand or present evidence, and it cannot be held against the defendant if he or she elects to remain silent or present no evidence?

*Id.* Initially, multiple venirepersons answered "yes" to the aforementioned question.[20] In response, the trial court addressed the venire to explain the

_____

[19] Rule 632 "requires that, prior to *voir dire* in any criminal case, the prospective jurors, including prospective alternate jurors, must complete the standard, confidential juror information questionnaire required in paragraph (H), and that the trial judge and attorneys must automatically be given copies of the completed questionnaires in time to examine them before *voir dire* begins." Pa. R. Crim. P. 632 (Comment).

[20] The record is unclear as to the exact number of venirepersons who answered this question affirmatively. Initially, counsel indicated that four prospective jurors answered "yes" to Question 12. *See* N.T. Trial, 11/7/18, at 37. Subsequently, however, Appellant's counsel refers only to three jurors while making her for cause challenge. *Id.* at 51. In his brief, Appellant states that "at least three[] prospective jurors . . . answered [Question 12] in the

purpose of Question 12 and inquire further as to the prospective jurors' willingness and capacity to follow instructions given by the court. That exchange proceeded as follows:

> [The court]: Okay. And then questions 11, 12, and 13 relate to some of the fundamental principles of our criminal justice system. And if you [are] selected to serve as a juror, I will give you the law that applies to this case and you [will] need to follow that law.
>
> And among the principles that you will need to follow is [] that the defendant in this case is presumed to be innocent, and it [is] the Commonwealth's burden of proving the defendant guilty beyond a reasonable doubt. The defendant does not have the burden of proving that he [is] not guilty. It [is] the Commonwealth that brought the charges and the Commonwealth must bear the burden of proof.
>
> Is there anybody here that would have – that would be unable to follow those legal instructions?
>
> (No response).
>
> [The court]: Okay. As a corollary to that, someone accused of a crime does not have to present evidence and, in fact, does not have to testify because, again, he does [not] have to prove that he is not guilty, nor does he have to present any witnesses on his behalf. And if the defendant does [not] present evidence or does [not] testify, you cannot hold that against him because he has a constitutional right to remain silent. Is there anybody here that would be unable to follow that principle of law?
>
> (No response).

N.T. Trial, 11/7/18, at 19-20. Shortly thereafter, Appellant's counsel addressed the jury pool as follows:

---

affirmative." Appellant's Brief at 11. Thus, for purposes of appeal, we conclude that Appellant is challenging the trial court's refusal to grant his for cause challenge to three prospective jurors. Specifically, venirepersons 18, 19, and 29. N.T. Trial, 11/7/18, at 51.

[Defense counsel]: The only other issue I wanted to talk to you folks about, and then we [will] get down to it, is a question that's on here, I believe, it [is number] 12 . . . it has to do with the Fifth Amendment.

So, you know, the Constitution, not the 13th or 14th thing, the [Fifth] – literally [number five] thing in the entire Constitution says that you do not have to testify in a trial where you are the one on trial. It [is] your right to remain silent.

But I also know living our own lives when you have children or whatever it is, you [are] not going to let them remain silent. You [are] going to say[,] tell me what happened, so sometimes it [is] not what we do in our own lives.

So a lot of people had said that they – you know, if the [d]efendant . . . did [not] get up there and take the stand . . . that they would [not] like that, that they would think that meant that he was guilty, that they would [not] be satisfied and that sort of thing. And a lot of people said that, and I completely get it.

So[,] I [am] just trying to see, did anybody – based on what the [j]udge told you, did anybody change their mind on what they put on their questionnaire, or are there still folks out there feeling that way[?]

So does anybody feel like if [Appellant] did [not] get up on the stand that you would hold it against him or have a problem with that? If you answered yes to [] [Question 12], are you still feeling that way?

(No response). [Appellant's counsel then attempted to individually *voir dire* the jurors who answered "yes" to Question 12, but the trial court prevented her from doing so because they "covered this ground."]

* * *

[Defense counsel]: Okay. I guess I [will] ask this: you all wrote answers on your questionnaire. Does everybody in here stick by what they put on their questionnaire or has anyone changed their mind?

(No response).

[Defense counsel]: Okay. Because if you do [not] raise your hand, then I assume that you [are] sticking by what you put on your

questionnaire. So is everybody sticking by what they put on their questionnaire? Okay. I see a lot of heads nodding. Okay.

*Id.* at 33-35. Subsequently, the following exchange occurred.

[The court]: [] [A]re there any other requests for cause?

***

[Defense counsel]: [] I [am] asking, [j]udge, the folks that answered yes to the question about the Fifth Amendment, which is [number] 12, they indicated – nobody raised their hands that they had changed their mind.

***

[Defense counsel]: That they are sticking by their answers. So[,] just for the record . . . [t]he only folks that would be, going through my notes, would be [#]18, [#]19, [#]29, and [#]47[.]

[The court]: I [am] not going to strike it on the written responses because we covered it a number of times where they had a chance to respond during that period after I discussed it with them.

*Id.* at 37. Finally, Appellant's counsel renewed her objection in chambers, by stating:

[Defense counsel]: So [J]udge, I just wanted to, for the record, renew my objections regarding *voir dire* and the Question [number] 12 about the Fifth Amendment and any peremptory challenges on just the three people who had answered yes to [number] 12. And during my presentation asking them if they changed their answer, just for the record, it was [#]18, [#]19, and [#] 29. I know it [has] been ruled on. I just wanted to preserve that.

*Id.* at 51. The Commonwealth then stated that "none of the three [venirepersons]. . . [are] effectively on the jury." *Id.*

Herein, Appellant failed to show an abuse of discretion or that the jurors who served at trial were not impartial. The record does not reflect, and Appellant does not contend, that the prospective jurors who originally gave affirmative answers to Question 12 - venirepersons 18, 19, or 29 - were ultimately selected for his jury. Moreover, although Appellant was permitted seven peremptory challenges, **see** Pa. R. Crim. P. 634(A)(2), he does not allege that he exhausted his allotment of peremptory challenges to remove the aforementioned venirepersons from the jury. Accordingly, we conclude that, even if the trial court committed an abuse of discretion by wrongfully refusing to strike venirepersons 18, 19, and 29 for cause and, as a result, Appellant was required to use three peremptory challenges to remove those prospective jurors, such error would be harmless since the trial court's rulings did not cause the defense to **exhaust** its peremptory challenges.[21] **See**

_____

[21] Appellant relies on our decision in **Penn** to support his assertion that, even though the venirepersons did not serve on his jury, his constitutional rights were violated. Appellant's Brief at 10-12. Specifically, Appellant argues that the "only notable difference" between the instant case and **Penn** is that "the challenge for cause [in **Penn**] was based on [the] prospective jurors' answer to [Question 10, not Question 12]." **Id.** at 11. We disagree. In **Penn**, the trial court refused to grant counsel's for cause challenge to a prospective juror. **Penn**, 132 A.3d at 501. As such, he was forced to exhaust his peremptory challenges to remove the venireman. **Id.** Accordingly, we concluded that the trial court's failure to excuse the challenged juror for cause was not harmless. **See id.** at 505, _quoting_ **Commonwealth v. Johnson**, 445 A.2d 509, 514 (Pa. Super. 1982) ("[w]here, as here, a defendant is forced to use one of his peremptory challenges to excuse a prospective juror who should have been excused for cause, and then exhausts his peremptories before the jury is selected, a new trial must be granted."). Herein, unlike in **Penn**, Appellant did not exhaust his peremptory challenges. Thus, if an error did occur, it was harmless.

*Commonwealth v. Kelly*, 134 A.3d 59, 62 (Pa. Super. 2016), *appeal denied* 134 A.3d 59 (Pa. 2016) ("[t]he improper refusal of a challenge for cause is harmless error where the juror is excluded by a peremptory challenge and the defendant does not exhaust his peremptory challenges.").

Appellant next claims that the trial court erred in admitting evidence of a conversation between him and his girlfriend, Loretta Weber, recorded on a telephone line at Erie County Prison. Appellant's Brief at 13. Appellant asserts that the Commonwealth's failure to disclose the existence of the recorded conversation until the first day of trial violated Pa.R.Crim.P. 573 and his right to due process. *Id.* at 12-15. We disagree.

"We note that questions involving discovery in criminal cases lie within the discretion of the trial court." *Commonwealth v. Rucci*, 670 A.2d 1129, 1140 (Pa. 1996), *cert. denied*, 520 U.S. 1121 (1997). Pennsylvania Rule 573 of Criminal Procedure provides, in relevant part, as follows:

(B) **Disclosure by the Commonwealth.**

(1) **Mandatory**. In all court cases, on request by the defendant, and subject to any protective order which the Commonwealth might obtain under this rule, the Commonwealth shall disclose to the defendant's attorney all of the following requested items or information, provided they are material to the instant case. The Commonwealth shall, when applicable, permit the defendant's attorney to inspect and copy or photograph such items.

\*\*\*

(g) the transcripts and recordings of any electronic surveillance, and the authority by which the said transcripts and recordings were obtained.

- 10 -

Pa.R.Crim P. 573. "Rule 573 applies equally to evidence used as part of the [Commonwealth's] case in chief and evidence used in rebuttal against defense witnesses." *Commonwealth v. Hanford*, 937 A.2d 1094, 1100 (Pa. Super. 2007).

Herein, on September 11, 2018, Appellant requested the "information and material discoverable under Rule[] 573B(1)(a-g)." Appellant's Specific Request for Additional Pre-Trial Discovery and Inspection, 9/11/18, at 1. Yet, the Commonwealth failed to produce the recorded conversation to Appellant until "lunch[time on] the first day of trial." N.T. Trial, 11/8/18, at 125. Delayed production of materials subject to mandatory disclosure "'does not[, however,] automatically entitle [A]ppellant [to relief].'" *Commonwealth v. Causey*, 833 A.2d 165, 171 (Pa. Super. 2003) (citation omitted). To obtain relief, Appellant must show prejudice. *Id.* To establish prejudice, Appellant "must demonstrate how a more timely disclosure would have affected his trial strategy or how he was otherwise prejudiced by the alleged late disclosure." *Id.*

Currently, Appellant asserts that, if counsel "had the opportunity to review the recording[] prior to the commencement of trial, the defense's strategy **might** have changed or [] Weber **might** not have been offered as a witness." Appellant's Brief at 15 (emphasis added). A review of the certified record, however, undercuts Appellant's claims. As previously stated, the Commonwealth disclosed the recorded conversation to Appellant during lunch on the first day of trial. N.T. Trial, 11/8/18, at 125. Per the trial court, the

- 11 -

recording lasted "approximately one and one-half minutes." Trial Court Opinion, 3/7/19, at 9. Loretta Weber, Appellant's *alibi* witness, testified on the second day of trial. N.T. Trial, 11/8/18, at 68-120. The Commonwealth played the recorded conversation for the jury "to rebut Weber's testimony . . . about what time she went to bed [on the night of the incident] and about whether she [] reported [her] vehicle stolen." Trial Court Opinion, 3/7/19, at 9. Thus, despite Appellant's assertion, he received the recording the day before Weber testified and, nevertheless, decided to call her as a witness. Under the circumstances of this case, including the nature of Weber's testimony and the contents of the recording, we fail to see how a more timely disclosure would have altered Appellant's defense strategy. As such, we agree with the trial court that Appellant was not prejudiced by the Commonwealth's delayed production of the recording. *Id.* at 10. Furthermore, we note that Appellant's conditional, and substantially threadbare, assertion is insufficient to establish prejudice. *See Causey*, 833 A.2d at 171. Accordingly, Appellant's claim of error fails.

Finally, Appellant contends that the evidence presented at trial was insufficient to support his convictions for possession with intent to deliver, possession of a controlled substance, and possession of drug paraphernalia. Appellant's Brief at 16-19. Chiefly, Appellant argues that the Commonwealth presented insufficient evidence to prove that he was in "possession" of any of the narcotics or paraphernalia found in the vehicle. *Id.* We will address these related claims together.

We note:

The standard we apply in reviewing the sufficiency of the evidence is whether viewing all the evidence admitted at trial in the light most favorable to the verdict winner, there is sufficient evidence to enable the fact-finder to find every element of the crime beyond a reasonable doubt.  In applying the above test, we may not weigh the evidence and substitute our judgment for [that of] the fact-finder.  In addition, we note that the facts and circumstances established by the Commonwealth need not preclude every possibility of innocence.  Any doubts regarding a defendant's guilt may be resolved by the fact-finder unless the evidence is so weak and inconclusive that as a matter of law no probability of fact may be drawn from the combined circumstances.  The Commonwealth may sustain its burden of proving every element of the crime beyond a reasonable doubt by means of wholly circumstantial evidence.  Moreover, in applying the above test, the entire record must be evaluated and all evidence actually received must be considered.  Finally, the trier of fact while passing upon the credibility of witnesses and the weight of the evidence produced, is free to believe all, part or none of the evidence.

*Commonwealth v. Vargas*, 108 A.3d 858, 867–868 (Pa. Super. 2014) (*en banc*) (citation omitted).

"In narcotics possession cases, the Commonwealth may meet its burden by showing actual, constructive, or joint constructive possession of the contraband." *Commonwealth v. Thompson*, 428 A.2d 223, 224 (Pa. Super. 1981).  Actual possession is proven "by showing ... [that the] controlled substance [was] found on the [defendant's] person." *Commonwealth v. Macolino*, 469 A.2d 132, 134 (Pa. 1983).  If the contraband is not discovered on the defendant's person, the Commonwealth may satisfy its evidentiary burden by proving that the defendant had constructive possession of the drugs.  *Id.*  "Constructive possession requires proof of the ability to exercise

- 13 -

conscious dominion over the substance, [in other words,] the power to control the contraband, and the intent to exercise such control." ***Commonwealth v. Bricker***, 882 A.2d 1008, 1014 (Pa. Super. 2005). "Constructive possession may be established by the totality of the circumstances." ***Id***.

The trial court summarized the relevant testimony/evidence presented as follows:

> [First,] [t]he Commonwealth presented the testimony of Sabreena Cole[.] On June 9, 2018, Cole was attending a school reunion party at a home on Route 8 just west of the intersection with Kuhl Road in Greene Township, Erie County, Pennsylvania. Cole observed Appellant at the party and noted that he was intoxicated and trying to get on a four-wheeler. Later that evening as she was heading to her car to leave, Cole saw Appellant again [near where the cars were parked] and testified [that] he was "[w]alking across the driveway and he was clearly intoxicated because he was not walking like a normal person. He was stumbling." Minutes later, Cole heard a "loud boom" and saw smoke coming from the direction of Route 8 and the intersection with Kuhl Road. Cole drove to the scene of the accident and saw a black car with the airbag deployed and no occupants inside.
>
> [Second,] [t]he Commonwealth presented the testimony of Bradley Pence[.] On June 9, 2018 at approximately 11:00 p.m., Pence was driving northbound on Route 8 in Greene Township, Erie County, Pennsylvania. As he approached the intersection of Route 8 and Kuhl Road, Pence was struck by another vehicle from behind. The impact caused Pence's truck to roll over. Pence observed a man "flop out" of the other vehicle, "dig[ in the dirt for something . . . and then reach[ ] back into the car for a briefcase." The man then proceeded away from the scene of the crash on foot.
>
> [Third,] [t]he Commonwealth presented the testimony of Trooper Ryan Tyler of the Pennsylvania State Police[.] On June 9, 2018, Trooper Tyler was dispatched to an accident at the intersection of Route 8 and Kuhl Road in Greene

- 14 -

Township, Erie County, Pennsylvania. Upon arriving at the scene, Trooper Tyler observed a red pick-up truck later identified as belonging to Michael Pence, father of Bradley Pence, and a 2004 black Audi A4, later identified as belonging to Loretta Weber, Appellant's girlfriend. There were no occupants in the Audi but the driver's side door was left open. The vehicle was searched and a cell phone was recovered from the passenger side floor.

Eyewitness reports indicated [that] the male driver [of the black Audi fled] from the vehicle after the crash and Trooper Tyler went to search in the direction the driver [ran]. Trooper Tyler located a briefcase/bag and a lighter on the ground a short distance from the road. Contained inside the briefcase, Trooper Tyler found various items of contraband. This included a Crown Royale bag containing a digital scale, multiple plastic baggies, scissors, and Appellant's expired Pennsylvania driver's license. The briefcase contained a waterproof container with a bag of marijuana inside. A green camo false container was found in the briefcase, and inside the false container was a glass bowl with marijuana residue, two bags of cocaine, more bags of marijuana, a partially smoked marijuana blunt, and 98 hits of LSD. …A switchblade was also located in the briefcase. Loosely stored in the bag were two AARP cards with Appellant's name on them, a doctor's appointment card with Appellant's name, and receipts from Advanced Auto Parts with Appellant's name and at least one containing a reference to the black Audi involved in the crash.

After leaving the accident scene, Trooper Tyler and his partner Trooper Eddie Machacek went to Loretta Weber's residence [] to further investigate but were unable to make contact with anyone that night. It was stipulated by the parties that Appellant was residing at the address with Weber until at least June 9, 2018.

During rebuttal testimony, Trooper Tyler testified he was finally able to make contact with Weber by telephone on June 14, 2018. At no point during that conversation did Weber ever tell Trooper Tyler her Audi had been stolen and[,] in fact[, she] stated she let anyone drive it.

[Fourth, the Commonwealth presented the testimony of Ted Williams] of the Pennsylvania State Police Forensic Services

- 15 -

and Erie Regional Crime Lab[.] Williams analyzed the items that had been retrieved from the briefcase and prepared a report. Williams tested four plastic bags containing plant material that tested positive for marijuana with a total weight of 28.17 grams. Two bags containing white substances tested positive for cocaine with a total weight of 38.81 grams. …A [three by three] inch sheet of paper divided into 98 quarter-inch squares tested positive for LSD.

[Lastly, the Commonwealth presented the testimony] of Detective Anne Styn of the Erie District Attorney's Office[.] Detective Styn conducts digital forensic examinations on cell phones and computers, and she was asked by the investigators to extract data from the cell phone recovered from the Audi. The extraction revealed that [in May 2018] there had been multiple contacts with the phone number associated with Loretta Weber, Appellant's girlfriend. In addition, photos pulled from the phone contained images of Appellant and Weber.

Trial Court Opinion, 8/15/19, at 3-6.[22] (footnote and internal citations omitted).

When viewing the aforementioned evidence in the light most favorable to the Commonwealth, we hold that the evidence presented in this case at bar was sufficient to prove that Appellant was, in fact, the driver of the 2004 Audi A4 and, in addition, was in constructive possession of the narcotics and paraphernalia recovered from the briefcase located near the motor vehicle following the accident that occurred on June 9, 2018.

---

[22] The trial court also summarized the testimony of Corporal Scott Zinram. He is a member of the Pennsylvania State Police Vice and Narcotics Unit and was admitted as an expert during Appellant's trial. *See* N.T. Trial, 11/8/18, at 24-47. His testimony was offered to prove that Appellant possessed the contraband with intent to distribute.

Because none of Appellant's issues warrant relief, we affirm the judgment of sentence.

Judgment of sentence affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 2/11/2020